JOHN DAVIS, APPELLEE AND CROSS-APPELLANT, V. CRETE CARRIER CORPORATION AND TRANSPORTATION CLAIMS, INC., ITS WORKERS' COMPENSATION INSURER, APPELLANTS AND CROSS-APPELLEES.

725 N.W.2d 562

Filed December 12, 2006.   No. A-05-1328.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellants.

Raymond P. Atwood, Jr., and Eric B. Brown, of Atwood, Holsten & Brown, P.C., L.L.O., for appellee.

IRWIN, MOORE, and CASSEL, Judges.

MOORE, Judge.

## INTRODUCTION

John Davis filed a motion in the Nebraska Workers' Compensation Court against Crete Carrier Corporation and its workers' compensation insurer, Transportation Claims, Inc. (collectively the Appellants), seeking to assess waiting-time penalties, interest, and attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2004). Davis alleged that the Appellants unilaterally stopped paying temporary total disability benefits which he was awarded under a February 2, 1993, award on re-hearing. Davis asserted entitlement to ongoing temporary total disability benefits from October 1994, when his indemnity benefits for temporary total disability stopped, until the hearing on the motion, or at least October 2, 2003, when he filed the motion. Davis also claimed there was no reasonable controversy regarding the Appellants' liability. The trial judge denied Davis' motion. Davis appealed and the Appellants cross-appealed to a Nebraska Workers' Compensation Court three-judge review panel. The Appellants have appealed to this court from the re-view panel's order of reversal and remand on review, and Davis has cross-appealed. For the reasons set forth herein, we affirm in part, and in part reverse.

## BACKGROUND

Davis sustained a compensable back injury on March 26, 1989, while employed by Crete Carrier Corporation. On February 2, 1993, after other proceedings not relevant to the present appeal, the compensation court entered an award on rehearing. With regard to disability, the court determined, in paragraph III of the award, as follows:

> At the time of said accident and injury [Davis] was receiving an average weekly wage of $501.52 being sufficient to entitle him to benefits of $245.00 per week for a period of 105-1/7 weeks for temporary total disability compensation and thereafter and in addition thereto the sum of $117.02 per week for 10 weeks of permanent partial disability compensation and thereafter and in addition thereto the sum of $245.00 per week from and including June 15, 1991 to and including the date of this rehearing on September 28, 1992 for total disability compensation and thereafter and in addition thereto the sum of $245.00 per week for so long in the future as [Davis] shall remain totally disabled as a result of said accident and injury. When [Davis'] total disability ceases, he shall be entitled to the statutory amounts of compensation for any residual permanent partial disability due to this accident and injury.

The court awarded certain medical and hospital expenses, including future medical and hospital services and such treatment "as may be reasonably necessary as a result of said accident and injury." In paragraph IX of the award, the court stated, "[Davis] is still entitled to vocational rehabilitation services at such time as he is able to participate in said services. If the parties are unable to eventually agree on the nature and/or extent of said vocational rehabilitation services, either party may request a hearing on this issue." In paragraph XII of the award, the court stated, "When [Davis'] total disability ceases if thereafter the parties cannot agree on the extent of [Davis'] disability, if any, then a further hearing may be had herein on the application of either party."

In November 1993, the compensation court entered an order, stating that "[p]ursuant to the stipulation of [Davis] and [the Appellants], received November 18, 1993, [the Appellants are]

hereby ordered to pay to [Davis] temporary disability compensation while [Davis] is undergoing vocational rehabilitation and maintaining satisfactory progress in the plan of which the stipulation is a part." The order is dated November 23, 1993, but is file stamped November 18. The record shows that Davis participated in a training program at a motorcycle mechanics' institute in Phoenix, Arizona, from December 13, 1993, through October 28, 1994.

The Appellants began paying Davis permanent partial disability benefits on October 29, 1994. On December 29, the Appellants stopped all disability payments to Davis after they had paid 300 weeks of benefits.

On October 2, 2003, Davis filed a motion seeking an order to assess waiting-time penalties, interest, and attorney fees pursuant to § 48-125. Davis alleged that on February 2, 1993, he received a running award of temporary total disability benefits, and that in 1994, the Appellants unilaterally stopped paying such benefits to Davis. Davis alleged that the Appellants were in arrears and liable to him for such delinquent benefits from the date of termination of payment to the date of the hearing on his motion. Davis further alleged that there was no reasonable controversy regarding the Appellants' liability to him and that the Appellants were thus also liable to him for waiting time, interest, and attorney fees for all delinquent payments due. Davis asked the court to sustain his motion, determine the delinquencies of the Appellants, and order the Appellants to pay waiting-time penalties, interest, and attorney fees.

The Appellants filed a motion for summary judgment on August 31, 2004. The Appellants alleged that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. The Appellants alleged that they paid to Davis the benefits ordered by the court on February 2 and November 23, 1993, and that the November 23 order superseded or modified the February 2 award on rehearing. The Appellants also asserted that Davis' claim for further benefits was barred by the statute of limitations set forth in Neb. Rev. Stat. § 48-137 (Reissue 2004), the law-of-the-case doctrine, the doctrine of res judicata, the doctrine of issue preclusion, the doctrine of laches, and the doctrine of unclean hands. The

Appellants asserted that the compensation court had jurisdiction pursuant to Neb. Rev. Stat. § 48-161 (Reissue 2004) to decide any issue ancillary to the resolution of Davis' right to compensation benefits, including the issues raised by the Appellants in their motion for summary judgment.

Following an evidentiary hearing, the compensation court entered an order overruling the Appellants' motion for summary judgment on September 29, 2004. The court concluded that the 2-year statute of limitations does not apply to a case where a petition has been filed and an award entered. The court found that the doctrines of issue preclusion, res judicata, and the law of the case did not act to bar Davis' claim. The court observed that it was not a court of equity and had no equitable powers, thus concluding that it was unable to apply the equitable doctrines of laches and unclean hands. Finally, with regard to whether there was a reasonable controversy concerning Davis' right to relief, the court found that it must make a factual determination.

The compensation court heard Davis' motion for waiting-time penalties, interest, and attorney fees on September 30, 2004. In addition to receiving various exhibits offered by the parties, the court heard testimony from Davis. Davis testified that he received certain benefits from the Appellants due to a work-related injury he sustained in 1989 and that those benefits ceased around the end of November 1994. Davis testified that from the end of November 1994 until September 2003, he neither received nor requested any further benefits from the Appellants. Davis testified that he did not contact any representative of the Appellants during that time because he was told by his attorney in approximately 1993 or 1994 that he had "X number of weeks of benefits and that would be it." When he stopped receiving indemnity checks, Davis assumed, based on what his attorney had told him, that that was "the end of the number of weeks that [he was] entitled to" receive.

Davis testified that he sought employment in the field of motorcycle mechanics after completing his vocational rehabilitation training but was unable to locate employment with a motorcycle dealership. The record shows that after December 1994, Davis was employed as a taxi driver by, or leased a vehicle to,

various cab companies for certain periods between approximately 1995 and 2000. Under the lease agreements, Davis had other individuals available to drive the cabs and only drove occasionally himself because of his back injury. At the time of the hearing on Davis' motion, Davis was not employed or operating under any type of lease agreement with any cab company. Davis testified that he lost money in his endeavors as a cab-driver/lessor, eventually filing for bankruptcy in September 2000. Davis testified that he did not disclose all of the information regarding the cab company leases in certain interrogatories from the Appellants because he thought the questions were asking whether he was actually employed by someone.

One exhibit received by the court was a letter, dated November 23, 1993, from Dr. William Fulcher, one of Davis' treating physicians, to a rehabilitation services professional. In the letter, Dr. Fulcher stated that Davis had reached maximum medical improvement and had a 25-percent medical impairment rating of the body as a whole.

The compensation court entered an order on May 5, 2005, overruling Davis' motion. The court outlined Davis' claim and found the evidence uncontradicted that the Appellants stopped all payments to Davis on December 29, 1994, after having paid 300 weeks of benefits. The court observed that Davis' position assumed a running obligation on the part of the Appellants to make those payments, making the following findings in that regard:

1. On February 2, 1993, an Award on Rehearing was entered which provided that [Davis] was entitled to receive weekly benefits through the date of rehearing (September 28, 1992) for a total of 182 and 4/7 weeks. For 10 weeks, in the middle part of this 182 and 4/7 week period, [Davis] was found to be permanently partially disabled. For the remainder of the time the reviewing panel found, in Paragraph II of the Award on Rehearing, that [Davis] was temporarily partially disabled. It is significant that the last part of Paragraph II stated that [Davis] was temporarily totally disabled "to the date of this rehearing on September 28, 1992, is still temporarily totally disabled and will remain temporarily totally disabled for an indefinite future period of time." . . .

2. References to "total disability" or "totally disabled" in later portions of the Award on Rehearing, when viewed in the entire context of the document, are references to the periods of temporary total disability as discussed in Paragraph 1, above. As a result, when [Davis] reached maximum medical improvement as established by Dr. Fulcher on November 23, 1993, [Davis] was no longer "temporarily totally disabled", but became permanently disabled. The extent and nature of the permanent disability would, of course, be an issue to be decided in the future by the Nebraska Workers' Compensation Court, if necessary. That was the reason for the language by the review panel which allowed for further hearing on the application of either party. This finding was further buttressed by the review panel[']s finding that "[w]hen [Davis'] total disability ceases, he shall be entitled to the statutory amounts of compensation for any residual permanent partial disability due to this accident and injury." The order entered on November 18, 1993, pursuant to stipulation by the parties, did nothing to change the analysis set forth above except for continuing temporary disability payments until [Davis] finished the agreed upon and Court ordered vocational retraining.

3. [Davis] argues that in the cases of Sheldon-Zimbelman v. Bryan Mem. Hosp., 258 Neb. 568, 604 N.W.2d 396 (2000) and Starks v. Cornhusker Packing Co., 254 Neb. 30, 573 N.W.2d 757 (1998), it is required that the [Appellants] file an application to modify the Award on Rehearing before terminating benefits. However, both those cases dealt with awards of permanent disability, not temporary disability as found in Paragraph II of the Award on Rehearing[,] and do not apply to the circumstances of this case. Such a result would leave this Court subjected to hundreds, if not thousands, of potential modification actions which would need to be filed before various plaintiffs attained maximum medical improvement in order to change the benefit amounts on the date of maximum medical improvement. Such an interpretation is simply not a feasible interpretation of Sheldon-[Z]imbelman and Starks,

*supra*[,] and has never been applied by this Court for running awards of temporary total disability. When a running award of temporary total disability is entered, a hearing is not necessary unless the parties disagree about the extent and nature of any permanent partial disability. When the subsequent hearing takes place, if requested, the decision retroactively applies back to the point in time when the plaintiff was no longer temporarily totally disabled.

4. Neb. Rev. Stat. § [48-121(2)] establishes that, unless an injured employee is permanently and totally disabled, the employee's entitlement to benefits for partial disability is limited to a total of 300 weeks, less any weeks of total disability indemnification received. Under this statutory regime, the [Appellants] fulfilled their statutory obligation under the language of the Award on Rehearing as interpreted above. It is clear from the evidence that, when [Davis] attained maximum medical improvement on November 23, 1993, he was not permanently and totally disabled. In fact, he was able to successfully complete his vocational retraining program, and although it does not appear that he was financially successful with some of his business endeavors, he worked for many years prior to his filing of the present motion which is at issue in this case. It is the finding of this Court that such work involved "suitable gainful employment" as those words are meant to be interpreted pursuant to Neb. Rev. Stat. § 48-162.01. [Davis] is entitled to no additional benefits from the [Appellants]. That is evidently what he and counsel thought for the good many years that passed from the date of last payment to the date of filing of the pending motion.

With regard to Davis' claim for waiting-time penalties and attorney fees, the compensation court determined there was a reasonable controversy with respect to the Appellants' obligation to pay additional indemnification benefits to Davis after 300 weeks' payments were made. The court stated that even if it was assumed for the purpose of argument that those added payments were owed to Davis, there was certainly a reasonable controversy with respect to that obligation. The court stated that it was aware of no case law addressing factual circumstances

similar to those of the present case, stating further, "It is, at best, only an open legal question with respect to whether or not added payments were owed. However, as set forth above, no such obligation existed." The court again stated its findings as set forth in the ruling on the Appellants' motion for summary judgment with regard to the various affirmative defenses asserted by the Appellants. The court overruled Davis' motion in its entirety.

Davis filed an application for review on May 18, 2005, asserting that the compensation court erred in making certain factual and legal findings. The record before us includes the briefs filed by the parties before the review panel and shows that the Appellants assigned and argued certain errors on cross-appeal.

The three-judge review panel of the compensation court entered an order of reversal and remand on September 30, 2005. The review panel stated:

> The [Appellants] maintain that they are only required to pay 300 weeks of benefits and that the effective method to terminate a running award of benefits pursuant to Neb. Rev. Stat. § 48-141 has been satisfied by the stipulation and order of the parties entered November 23, 1993 . . . . The [Appellants] argue this order and stipulation satisf[y] the requirement of an "agreement of the parties with the approval of the Nebraska Workers' Compensation Court" pursuant to § 48-141 to terminate a running award of benefits.
>
> Interpretation of a stipulation and an order is a question of law. The review panel finds that the stipulation of the parties . . . and the Order of the Workers' Compensation Court [do] not act as an "agreement of the parties" to terminate benefits for a running award pursuant to § 48-141. Rather the stipulation and order [go] to paragraph IX of the award on rehearing dated February 2, 1993, . . . which allows [Davis] to receive indemnity benefits while undergoing vocational rehabilitation.
>
> The law in Nebraska is that a workers' compensation award remains in full force and effect, as originally entered[,] until the award is modified pursuant to the procedures set forth in § 48-141. The correct procedure to modify an award is set forth in the cases of ITT Hartford v.

Rodriguez, 249 Neb. 445, 543 N.W.2d 740 (1996); Starks v. Cornhusker Packing Co., 254 Neb. 30, 573 N.W.2d 757 (1998) and Hagelstein v. Swift-Eckrich Div. of ConAgra, 261 Neb. 305, 622 N.W.2d 663 (2001). Those cases hold that there must be a hearing to terminate benefits. Benefits may not be summarily terminated as was done in this case.

A review of the record by the review panel shows that to date no party has filed a motion to modify the award on rehearing of February 2, 1993, nor is there an agreement by the parties with Court approval pursuant to § 48-141 assessing and determining [Davis'] loss of earning capacity. Those procedures must be undertaken pursuant to § 48-141 and the above case law before benefits can be terminated. Benefits cannot be retroactively terminated prior to the date of the filing of the petition to modify. See Starks, supra.

The review panel finds that the trial court misstated the law in the state of Nebraska to be that an application to modify is not required when terminating temporary disability benefits. The review panel finds that whether a party is terminating "temporary total disability benefits" or "permanent total disability benefits," it is a distinction without a difference. The correct statement of the law specifically requiring a modification application to terminate payment of benefits under an award is set forth in Sheldon-Zimbelman v. Bryan Mem. Hosp., 258 Neb. 568, 604 N.W.2d 396 (2000) and Starks, supra. The review panel finds that the trial court was incorrect in its application of the law concerning modification proceedings of a running award and that the matter should be reversed and remanded to the trial court for a determination as to the amount due [Davis] for enforcement of the award on rehearing dated February 2, 1993 for outstanding indemnity benefits, and for a determination as to penalties, if any, due and owing.

With regard to the Appellants' cross-appeal, the review panel found that the trial court was correct in its interpretation of the law concerning the issue of the statute of limitations in this case. Citing Foote v. O'Neill Packing, 262 Neb. 467, 632 N.W.2d 313 (2001), the review panel stated that once a petition has been filed within the appropriate period of time, no further statute of

limitations issue can arise during the pendency of the action. The review panel awarded Davis a $500 attorney fee together with interest as allowed by law for defending against the cross-appeal.

The Appellants subsequently perfected their appeal to this court, and Davis has cross-appealed.

## ASSIGNMENTS OF ERROR

The Appellants assert, consolidated and restated, that the review panel erred in (1) reversing the trial court's order overruling Davis' motion to assess waiting-time penalties, interest, and attorney fees and (2) failing to apply the 2-year statute of limitations.

On cross-appeal, Davis asserts, consolidated and restated, that the review panel erred in (1) failing to find that no reasonable controversy existed and to remand with directions to determine the amount of waiting-time penalties due under § 48-125, (2) failing to award Davis attorney fees and interest for proceedings before the review panel and to remand with directions to award attorney fees and interest for proceedings before the trial court, and (3) failing to address and reverse certain findings made by the trial court and assigned as error to the review panel by Davis.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* Statutory interpretation presents a question of law. *Id.* With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Id.*

## ANALYSIS

*Errors Preserved for Appeal.*

We first address Davis' argument that the Appellants have preserved only the statute of limitations issue for appeal to this court because additional issues raised by the Appellants on appeal to this court were not raised by the Appellants in their cross-appeal to the review panel.

It is true that in reviewing decisions of the Workers' Compensation Court, an appellate court will consider only those errors specifically assigned to the review panel and then reassigned on appeal. *Dietz v. Yellow Freight Sys.*, 269 Neb. 990, 697 N.W.2d 693 (2005). It is also true that a party appealing from an order of the Nebraska Workers' Compensation Court waives all allegations of error not assigned in its application for review. *Id.* The issue of the trial court's ruling on Davis' motion for waiting-time penalties, attorney fees, and interest, while not raised by the Appellants in their cross-appeal to the review panel, was clearly raised by Davis in his application for review and was considered by the review panel. Because the issue of the trial court's ruling on Davis' motion was raised before and ruled on by the review panel, the Appellants are entitled to raise on appeal to this court the review panel's reversal of the trial court's ruling. See *id.* Davis' arguments to the contrary are without merit.

*Necessity of Application to Modify.*

The Appellants assert that the review panel erred in reversing the trial court's order overruling Davis' motion to assess waiting-time penalties, interest, and attorney fees. The Appellants argue that they acted in compliance with the February and November 1993 orders when they paid temporary total disability benefits to Davis during his vocational rehabilitation plan and then converted their payments to permanent partial disability benefits after Davis successfully completed his retraining. In other words, the Appellants assert that the review panel was incorrect in finding that an application to modify the award was necessary to terminate Davis' prior award of temporary total disability benefits.

We conclude that the November 1993 order reflected an agreement of the parties concerning the duration of Davis' temporary total disability award, and we therefore reverse the ruling of the review panel.

Neb. Rev. Stat. § 48-141 (Reissue 2004) provides, in relevant part:

> [T]he amount of any agreement or [workers' compensation] award payable periodically may be modified as follows: (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury . . . .

There is no assertion in the present case that an application to modify was ever filed by any of the parties. As a result, the issue presented is whether the November 1993 order satisfied § 48-141 (Cum. Supp. 1992) as an agreement of the parties with the approval of the compensation court concerning Davis' temporary total disability benefits, as the trial court concluded, or whether the November 1993 order dealt solely with vocational rehabilitation, as the review panel concluded.

Resolution of this issue requires us to determine the meaning of the November 1993 order. The meaning of a judgment is determined, as a matter of law, by its contents. See *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990). In the absence of an ambiguity, the effect of a judgment must be declared in light of the literal meaning of language used. *Dougherty v. Swift-Eckrich*, 251 Neb. 333, 557 N.W.2d 31 (1996). If the language of a judgment is ambiguous, there is room for construction. *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995). In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record. *Id.* A judgment is ambiguous if a word, phrase, or provision has at least two reasonable but conflicting meanings. See, *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 589 N.W.2d 129 (1999); *Kerndt v. Ronan, supra.* However, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the

conclusion that the instrument is ambiguous. *Fraternal Order of Police v. County of Douglas*, 259 Neb. 822, 612 N.W.2d 483 (2000). We find it necessary to review the entire record to determine the meaning of the November 1993 order.

It is important to note that in the present case, Davis' award of temporary disability benefits in the February 1993 order was an award of temporary total disability benefits. That order provided that Davis was entitled to temporary total disability benefits "for so long in the future as [Davis] shall remain totally disabled as a result of [this] accident and injury." In November 1993, the parties filed a vocational rehabilitation plan that included a stipulation. The stipulation specifically provided that Davis and the Appellants "do agree to the above [vocational rehabilitation] plan and hereby stipulate to the entry of an Order requiring the payment of temporary disability compensation to [Davis] *while [he] is undergoing the vocational rehabilitation plan.*" (Emphasis supplied.) "Pursuant to [this] stipulation," the trial court entered an order which provided only that the Appellants were "hereby ordered to pay to [Davis] temporary [total] disability compensation *while [he] is undergoing vocational rehabilitation and maintaining satisfactory progress in the plan.*" (Emphasis supplied.)

The effect of the November 1993 order, and the underlying stipulation of the parties, was solely to modify the duration of Davis' temporary total disability award. Under the terms of the February 1993 order, Davis was entitled to receive temporary total disability benefits and was entitled to receive vocational rehabilitation, and no further court order was necessary to accomplish either, so long as the parties were able to reach an agreement. The parties did reach an agreement, and the November order did not provide Davis any additional rights or benefits not already provided in the February order. Had the November order never been entered, Davis would still have been entitled to temporary total disability benefits and vocational rehabilitation. The only effect of the November order is that the trial court specifically changed the duration of Davis' temporary total disability award from "for so long in the future as [Davis] shall remain totally disabled" to "while [Davis] is undergoing vocational rehabilitation."

The present case differs from cases such as *ITT Hartford v. Rodriguez*, 249 Neb. 445, 543 N.W.2d 740 (1996), precisely because of the language of the trial court's November 1993 order and the underlying stipulation of the parties. In *ITT Hartford*, the employee received an award of temporary total disability benefits " 'for so long in the future as [the employee] shall remain temporarily totally disabled as a result of [the] accident.' " 249 Neb. at 446, 543 N.W.2d at 741. The employee's treating physician later informed the employer that the employee had reached maximum medical improvement, whereon the employer stopped paying temporary total disability benefits and began making permanent partial disability payments. The Nebraska Supreme Court ultimately held that the original award had never been modified by the compensation court pursuant to § 48-141 (Reissue 1993) and that the original award remained in full force and effect. The Supreme Court also held that the employer was not free to unilaterally determine, based on information received from the physician, that the employee was no longer temporarily totally disabled.

In the present case, we find as a matter of law that the November 1993 order modified the duration of the prior award of temporary total disability benefits. We conclude that the review panel erred in reversing the trial court's conclusion that a specific application to modify was not necessary in this case, because § 48-141 (Cum. Supp. 1992) specifically provided that a periodic award may be modified by agreement of the parties approved by the court and because the November 1993 order and underlying stipulation satisfied the statute. As such, we reverse the review panel's determination that this issue be remanded to the trial court for a determination as to the amount due Davis for enforcement of the award and for a determination as to penalties due and owing.

*Application of Statute of Limitations.*

The Appellants assert that the review panel erred in failing to apply the 2-year statute of limitations in § 48-137 to bar Davis' enforcement motion for penalties, interest, and attorney fees. Given the result reached above, we need not consider this assignment of error. An appellate court is not obligated to

engage in an analysis which is not needed to adjudicate the controversy before it. *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

*Failure to Award Waiting-Time Penalties.*

In his cross-appeal to this court, Davis asserts that the review panel erred in failing to find that no reasonable controversy existed and to remand with directions to determine the amount of waiting-time penalties due under § 48-125. Section 48-125 authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation benefits. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005), *modified on other grounds* 270 Neb. 40, 699 N.W.2d 819. Whether a reasonable controversy exists under § 48-125 is a question of fact. *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000). A reasonable controversy under § 48-125 may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Bixenmann v. H. Kehm Constr.*, 267 Neb. 669, 676 N.W.2d 370 (2004). To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

The trial court in this case determined that there was a reasonable controversy with respect to the Appellants' obligation to pay additional indemnification benefits to Davis after 300 weeks' payments were made. This finding was assigned as error by Davis in his application for review. The review panel did

not explicitly address the trial court's finding of a reasonable controversy, but it did reverse the order overruling Davis' motion and remand the matter to the trial court to determine the amount of benefits due and owing for indemnity as a result of the award on rehearing and to determine the amount of penalties, if any, due and owing pursuant to § 48-125. We have reversed this determination by the review panel. Accordingly, we find no error in the review panel's failure to find that no reasonable controversy exists, and we find that the trial court was correct in finding that there was a reasonable controversy with respect to the Appellants' obligation to pay additional indemnity benefits.

*Failure to Award Attorney Fees and Interest.*

Davis asserts that the review panel erred in failing to award Davis attorney fees and interest for proceedings before the review panel and to remand with directions to award attorney fees and interest for proceedings before the trial court.

We first observe that the review panel did award an attorney fee of $500 for Davis' defense against the Appellants' cross-appeal to the review panel. Davis argues, however, that the review panel should have also awarded him an attorney fee for his successful appeal of the trial court's denial of his motion, not just for his defense against the cross-appeal. With regard to an employee's appeal to the review panel, § 48-125(1) provides, in relevant part:

> If the employee files an application for a review before the compensation court from an order of a judge of the compensation court denying an award and obtains an award or if the employee files an application for a review before the compensation court from an award of a judge of the compensation court when the amount of compensation due is disputed and obtains an increase in the amount of such award, the compensation court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review, and the Court of Appeals or Supreme Court may in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the Court of Appeals or Supreme Court.

The present case does not involve a situation where an "employee file[d] an application for a review before the compensation court from an order of a judge of the compensation court denying an award and obtain[ed] an award." See *id.* Nor does the present case involve a situation where an "employee file[d] an application for a review before the compensation court from an award of a judge of the compensation court when the amount of compensation due [was] disputed and obtain[ed] an increase in the amount of such award." See *id.* Instead, Davis brought the present motion as a proceeding for enforcement of the award obtained by Davis in February 1993. Davis has not obtained a new award of benefits by virtue of the present motion. In fact, we have determined, as a matter of law, that the November 1993 order modified the duration of the prior award of temporary total disability benefits. It cannot be said that Davis has "obtained an award" or "obtained an increase" in an award. Accordingly, Davis was not entitled to an attorney fee for his appeal of the trial court's denial of his motion.

With regard to Davis' assertion that the review panel erred in failing to award him attorney fees at the trial court level (or to direct the trial judge to do so on remand), we observe that where there is no reasonable controversy, § 48-125 authorizes the award of attorney fees. *Bixenmann v. H. Kehm Constr.*, 267 Neb. 669, 676 N.W.2d 370 (2004). We further observe that an award of attorney fees is a prerequisite before interest on the compensation amount due to a claimant may be awarded under § 48-125(2). *Blizzard v. Chrisman's Cash Register Co.*, 261 Neb. 445, 623 N.W.2d 655 (2001). We have already determined that the trial court was correct in finding that there was a reasonable controversy with respect to the Appellants' obligation to pay additional indemnity benefits. Because there was a reasonable controversy, Davis was entitled to neither an award of attorney fees nor interest at the trial court level.

*Failure to Address Assigned Errors About Evidentiary Matters.*

Finally, Davis asserts that the review panel erred in failing to address and reverse certain findings made by the trial court and assigned as error to the review panel by Davis. The findings assailed by Davis include the trial court's finding that Davis

reached maximum medical improvement on November 23, 1993. Essentially, Davis argues that the trial court received certain evidence and made certain findings amounting to a modification of the award on rehearing, when, in fact, the proceeding before the trial court was not one for modification. Davis argues that the review panel should have reversed the specific findings of the trial court that amounted to a modification of the award on rehearing and found that the trial court's receipt of the evidence relating to modification issues was in error.

The findings and evidence which Davis attacks were not relevant or considered by this court in reaching our conclusion that the November 1993 order modified the duration of the prior award of temporary total disability benefits. Accordingly, we need not address this assignment of error further on appeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

## CONCLUSION

For the foregoing reasons, the determination of the review panel is hereby affirmed in part and in part reversed as set forth above.

AFFIRMED IN PART, AND IN PART REVERSED.