747 N.W.2d 24 (2008)
16 Neb. App. 589
Edmon T. HOLMES, appellant,
v.
CHIEF INDUSTRIES, INC., appellee.
No. A-07-550.
Court of Appeals of Nebraska.
March 18, 2008.
*25 Brenda S. Spilker and Amanda A. Dutton, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellant.
Mark A. Fahleson and Sarah S. Pillen, of Rembolt Ludtke, L.L.P., Lincoln, for appellee.
SIEVERS, CARLSON, and MOORE, Judges.
SIEVERS, Judge.
Chief Industries, Inc. (Chief), sought and obtained a reduction in Edmon T. *26 Holmes' workers' compensation benefits via an order from a Nebraska Workers' Compensation Court trial judge. Holmes appealed this order to a compensation court review panel that found that Holmes' award had been modified by agreement of the parties pursuant to Neb.Rev.Stat. § 48-141(1) (Reissue 2004), and as a result, the trial judge's reduction of benefits was affirmed. Holmes has now appealed to this court, arguing that no such modification ever occurred.

FACTUAL AND PROCEDURAL BACKGROUND
On September 10, 1997, and September 4, 1998, Holmes was employed as a truckdriver by Chief. On both of those dates, Holmes sustained a compensable injury while on the job, the details of which are not pertinent to this appeal. On March 22, 2000, the compensation court entered an award for Holmes. The relevant portions of that award for this appeal are as follows:
At the time of the accident and injury of September 10, 1997, [Holmes] was receiving an average weekly wage of $340.63 being sufficient to entitle him to benefits of $227.09 for temporary total disability from September 11, 1997 through October 6, 1997, July 23, 1998 through August 6, 1998 and May 26, 1999 through the date of hearing and for so long in the future as [Holmes] shall remain temporarily totally disabled.

(Emphasis supplied.)
On October 9, 2003, Holmes's former attorney, Tony Brock, made a motion to the compensation court for an order approving a lien for attorney fees. On October 16, the compensation court held a hearing in which Chief and Brock participated, but Holmes was not in attendance or represented. Brock had stated in his motion for approval of an attorney's lien that he no longer represented Holmes, and thus he was only appearing for himself. On October 24, the court entered an order finding that Brock was entitled to a lien. The order provided that "Brock represented that [Holmes] now receives permanent indemnity of $45.42 per week which entitles... Brock to an attorney's fee of $15.14 per week." Chief consequently reduced Holmes' periodic disability payments by an amount equal to Brock's attorney's lien.
On January 4, 2006, Holmes filed a motion with the compensation court, asserting, among other things, that no modification had been made to the March 22, 2000, award, which as set forth above gave him a "running" award of temporary total disability (TTD), but that Chief had failed to pay Holmes his weekly benefits required by the running award of TTD. On August 14, 2006, the compensation court trial judge entered an order which found, among other things, that in accordance with § 48-141, a modification had been made to the original award.
Holmes timely appealed the August 14, 2006, order to a compensation court review panel, which affirmed the trial judge's order and dismissed the appeal, citing our decision in Davis v. Crete Carrier Corp., 15 Neb.App. 241, 725 N.W.2d 562 (2006). Holmes now appeals to this court.

ASSIGNMENT OF ERROR
Holmes assigns error to the compensation court's finding that the order of October 24, 2003, was a modification of the March 22, 2000, award, pursuant to § 48-141(1).

STANDARD OF REVIEW
Pursuant to Neb.Rev.Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' *27 Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Ortiz v. Cement Products, 270 Neb. 787, 708 N.W.2d 610 (2005). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. Id. Statutory interpretation presents a question of law. Id. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. Id.

ANALYSIS
Holmes contends that there was no modification of the March 22, 2000, award of continuing TTD payments and that the order of October 24, 2003, awarding Brock an attorney's lien is not a modification of the March 22, 2000, award, pursuant to § 48-141. Resolution of this issue requires us to determine the meaning of the October 24, 2003, order as it relates to the provisions of § 48-141. This presents a question of law about which we must make our own determination. See Ortiz v. Cement Products, supra. The pertinent portion of § 48-141 provides:
All amounts paid by an employer or by an insurance company carrying such risk, as the case may be, and received by the employee or his or her dependents by lump-sum payments, approved by order pursuant to section 48-139, shall be final, but the amount of any agreement or award payable periodically may be modified as follows: (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court[.]

(Emphasis supplied.)
We now turn to the meaning of the compensation court's judgment entered on October 24, 2003, with respect to Brock's application for an attorney's lien. The meaning of a judgment is determined, as a matter of law, by its contents. See Kerndt v. Ronan, 236 Neb. 26, 458 N.W.2d 466 (1990). In the absence of an ambiguity, the effect of a judgment must be declared in light of the literal meaning of language used. Dougherty v. Swift-Eckrich, 251 Neb. 333, 557 N.W.2d 31 (1996). If the language of a judgment is ambiguous, there is room for construction. Label Concepts v. Westendorf Plastics, 247 Neb. 560, 528 N.W.2d 335 (1995). In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record. Id. A judgment is ambiguous if a word, phrase, or provision has at least two reasonable but conflicting meanings. See Shivvers v. American Family Ins. Co., 256 Neb. 159, 589 N.W.2d 129 (1999); Kerndt v. Ronan, supra. However, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. Fraternal Order of Police v. County of Douglas, 259 Neb. 822, 612 N.W.2d 483 (2000).
With these background principles in place, we turn to Davis v. Crete Carrier Corp., 15 Neb.App. 241, 725 N.W.2d 562 (2006), relied upon by the review panel. Davis is helpful in determining whether the October 24, 2003, order of the compensation court constituted a modification of the award of March 22, 2000, under § 48-141(1).
In Davis v. Crete Carrier Corp., supra, John Davis had suffered a compensable injury while working for Crete Carrier Corporation (Crete), which injury resulted *28 in an award. Davis' initial award entitled him to disability benefits "`for so long in the future as [Davis] shall remain totally disabled as a result of [this] accident and injury.'" Id. at 255, 725 N.W.2d at 574. Subsequently, Davis and Crete filed a vocational rehabilitation plan that included a stipulation providing that "Davis and [Crete] `do agree to the above [vocational rehabilitation] plan and hereby stipulate to the entry of an Order requiring the payment of temporary disability compensation to [Davis] while [he] is undergoing the vocational rehabilitation plan.'" Id. (emphasis omitted). Clearly, in Davis, the parties stipulated to a specific rehabilitation plan, as well as for payment of TTD benefits "while" Davis was pursuing the plan. Pursuant to this stipulation, the trial court entered an order which provided that Crete was to pay Davis temporary disability benefits while he underwent vocational rehabilitation  the obvious corollary of which was "if not in the plan, no TTD."
When Davis completed his vocational rehabilitation, Crete ceased paying him temporary disability benefits. Davis made a motion to the compensation court, alleging that Crete had unilaterally ceased paying him benefits and was in arrears. Crete argued that the previous stipulation that payment of benefits would run until Davis completed vocational rehabilitation, and the court's order that memorialized that stipulation, had modified the original award by agreement in accordance with § 48-141(1). We found that Crete was correct, that is, that the underlying stipulation constituted an agreement between the parties pursuant to § 48-141(1), that such agreement was approved by the compensation court, and that thus the original award had been modified. Reduced to its essence, Davis finds that the parties' stipulation had set an "end date" for TTD benefits, marked by either the completion of the specific plan or Davis' failure to complete it  thus the importance of the stipulation for payment of TTD benefits only "while" he was in the specifically agreed-to plan. This is materially different from the "running award of TTD" held by Holmes; it goes without saying that a stipulation between the parties is an "agreement," and in Davis, the stipulation was approved and implemented by the compensation court's decision. None of these things are present in the instant case.
Consequently, the compensation court incorrectly relied on Davis to find that there was a modifying agreement. The compensation court's rationale was as follows, but it is fundamentally flawed given the facts of the present case:
[T]he submission by the parties of the issue of counsel's lien, and the Court's subsequent order approving payment of permanent disability benefits in specific amounts to counsel and [Holmes], arguably satisfies § 48-141. In other words, the Court, in its order of October 24, 2003, directed the payment of permanent disability benefits to [Holmes] based upon the obvious agreement of the parties which, in effect, modified the previous Award.
However, nowhere in the record can we locate the "obvious agreement" the compensation court judge references. To find an agreement, the trial judge used the representations of Brock, Holmes' former attorney, made at the October 16, 2003, hearing that Holmes was "now" receiving permanent disability. But, Brock was not representing Holmes at the time, Holmes was not present, and as a matter of law, former counsel's representations to the court about the status of his former client's case and his present benefits, absent appropriate authorization, cannot create a *29 modifying agreement between the parties to the award, namely, Holmes and Chief. Put another way, Brock lacked the authority to bind his former client to anything. In short, what the trial judge said was an "obvious agreement of the parties" is not in evidence, and could not be formed by Holmes' former lawyer, who was appearing only to secure an attorney's lien and had no authority to bind Holmes to a modification of his running award of TTD.
Chief asserts in its brief that an agreement between the parties did occur, but the evidence it uses to support this assertion is lacking as a matter of law. Chief claims that in the court's statement in its October 24, 2003, order that "Brock represented that [Holmes] now receives permanent indemnity," the use of the word "now" demonstrates that a modification had occurred. But, at best, Brock's statement merely characterizes the category of benefits Brock's former client was getting at the time of the lien hearing, and whose characterization he was repeating is unknown. The fact that Crete may have unilaterally changed Holmes' benefits from TTD to permanent partial disability benefits does not constitute a court-approved agreement for modification. As we noted in Davis v. Crete Carrier Corp., 15 Neb. App. 241, 725 N.W.2d 562 (2006), the employer cannot unilaterally change the worker's benefits. See ITT Hartford v. Rodriguez, 249 Neb. 445, 543 N.W.2d 740 (1996) (employer was not free to unilaterally determine, based on information received from physician, that employee was no longer temporarily totally disabled).
Brock's use of the term "now receives" could implicitly be contrasted against "back then, before the award was modified." In other words, while Crete could have "modified" the amount of money it was paying Holmes, mere unilateral modification does not satisfy the requirements of § 48-141(1). In the final analysis of this case, there is simply no evidence of an agreement between Holmes and Chief to modify the running award.
Therefore, in the context of Brock's seeking a lien against Holmes' benefits, the representation of what Holmes "now receives" allows, at most, the court to determine the amount that Brock should be paid by Crete for his lien from present benefits  but it does not prove the existence of the prerequisite agreement of the parties that has been approved by the court, as is required under § 48-141(1). Chief's further argument, that the inclusion of Chief's attorney in the October 16, 2003, hearing shows that the hearing was not intended solely to address the issue of Brock's attorney's lien, is not persuasive. Regardless of why Chief's lawyer was there, Holmes was not there and could not be bound by what his former lawyer told the judge, which would not be evidence in any event. Moreover, the pleading generating the hearing, Brock's motion for approval of an attorney's lien, quite obviously "sets the agenda" for the hearing  which was only Brock's entitlement to an attorney's lien. Whether Holmes and Crete had agreed to a modification of Holmes' running award of TTD, which agreement should be approved at the hearing under § 48-141(1), was not noticed for hearing, and no evidence was introduced at the hearing on that subject.
Therefore, because no agreement existed between Holmes and Chief regarding a modification of the March 22, 2000, award, we find that the compensation court erred when it found that such a modification had occurred.

CONCLUSION
For the reasons stated above, we reverse the compensation court's finding that the October 24, 2003, order modified the *30 March 22, 2000, award. We remand this cause to the compensation court review panel with directions to vacate its dismissal of Holmes' appeal and for such panel to remand the cause to the trial judge for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.