IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BEASON V. ELITE STAFFING


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


RAYMOND BEASON, APPELLEE, AND CROSS-APPELLANT,

V.

ELITE STAFFING AND ACE AMERICAN INSURANCE COMPANY, ITS WORKERS' COMPENSATION
INSURER, APPELLANTS, AND CROSS-APPELLEES.


Filed October 11, 2022.    No. A-22-044.


Appeal from the Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed.

Kathryn L. Hartnett, of Prentiss Grant, L.L.C., for appellants.

Travis A. Spier, of Atwood, Holsten, Brown, Deaver, Spier & Israel Law Firm, P.C., L.L.O., for appellee.


PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Elite Staffing and Ace American Insurance Company (collectively appellants) appeal from an order of the Nebraska Workers' Compensation Court finding that Raymond Beason suffered a work-related injury and awarding him workers' compensation benefits. Beason cross-appeals, arguing that he should have been awarded waiting time penalties pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2020). Based on the reasons that follow, we affirm.

## BACKGROUND

Beason began working for Elite Staffing on September 12, 2019, and he was subsequently assigned to work at the Tyson Foods beef processing plant in Lexington, Nebraska. Beason's work duties included clearing blood from the kill floor using a squeegee with a 12 foot handle and a 3

- 1 -

foot wide head. On September 30, Beason was using the squeegee to clear blood from the floor when he "felt a pop" and immediate sharp pain in his right shoulder, with associated weakness and numbness in his right hand. Beason's pain grew worse and he sought treatment on October 7 at an orthopedic clinic to which he had been directed by Elite Staffing. After an MRI in early December, Dr. Herbert Crockett diagnosed Beason with a "SLAP tear" in the right shoulder and recommended surgery. He also advised that a nerve conduction study be conducted first to rule out cervical radiculopathy or other conditions in light of the numbness Beason reported in his right hand. The study, performed in January 2020, revealed moderately severe right carpal tunnel, which Crockett required to be addressed before shoulder surgery because the surgery could make the carpal tunnel worse if left unaddressed. Up to this point, Elite Staffing had paid Beason's medical expenses and had been paying him temporary total disability benefits.

In February 2020, Elite Staffing directed Beason to be examined by another doctor, Dr. Dolf Ichtertz. After his examination, Ichtertz disagreed with Crockett's diagnosis in significant respects. Ichtertz did not see evidence of a labral tear on the MRI, as Crockett had found. His diagnosis was that all of Beason's problems were "spontaneous" injuries related to and aggravating chronic preexisting conditions. He did not believe there was any relation between the right shoulder and the numbness and tingling in the hand. Ichtertz opined that none of Beason's injuries were related to the September 30, 2019, work-related incident.

Based on Ichtertz's diagnosis, Elite Staffing refused to pay further benefits and medical expenses. Beason thereafter filed the present action for a determination of the compensability of past, present, and future benefits and medical expenses. He also sought a determination of whether he had reached maximum medical improvement (MMI) and, if so, whether he was entitled to permanent impairment benefits and vocational rehabilitation. Beason further sought an award of waiting time penalties, interest, and attorney fees pursuant to § 48-125.

At trial, Beason provided evidence including his medical records after the work-related incident and Crockett's medical opinions, as well as his own testimony. Elite Staffing presented evidence including Ichtertz's medical opinions.

Beason's testimony included information about a previous shoulder injury. Prior to working for Elite Staffing, Beason was employed by a company from 2007 to 2019 where he operated a sandblaster, installed insulation, performed machinery maintenance, and did roofing jobs. In 2012, Beason hurt his right shoulder while unloading bags of insulation. He did not see a doctor after the injury, did not have work restrictions imposed, and did not file a workers' compensation claim. He continued to do the same tasks as he had done before the 2012 injury with no restrictions until he left the company in 2019, and never had to ask coworkers for help in performing any tasks. He disclosed the 2012 injury when he reported his September 30, 2019, injury to Elite Staffing.

After the trial, the workers' compensation court entered an award in which it found that Beason had sustained an injury to his right shoulder, wrist, and hand as a result of an accident arising out of and in the course of his employment with Elite Staffing on September 30, 2019. In reaching its finding, the court considered the opinions of both Crockett and Ichtertz. The court adopted Crockett's opinions and disregarded Ichtertz's opinions. It found Ichtertz's opinions were lacking in probative value because he failed to directly address the accident of September 30 or explain why he did not consider it to be the cause of Beason's shoulder injury. The court further

found that because the recommended surgery had not yet been performed on Beason's shoulder, Beason had not reached MMI, and the court determined therefore that it was premature to determine whether he had permanent impairment. Based on its findings, the court ordered that Beason was entitled to temporary total disability benefits until he reached MMI and that he was entitled to past, present, and future medical expenses related to the injury. Finally, the court rejected Beason's request for waiting time penalties, interest, and attorney fees pursuant to § 48-125. The court found that, although it "was a close call," Ichtertz's opinions created a reasonable controversy and therefore an award pursuant to § 48-125 was not appropriate.

## ASSIGNMENTS OF ERROR

Appellants' brief fails to set forth a specific section assigning errors.

On cross-appeal, Beason raises three assignments of error, which we consolidate into one: The compensation court erred in finding that Elite Staffing's evidence created a reasonable controversy, thereby denying Beason waiting time penalties, interest, and attorney fees pursuant to § 48-125.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## ANALYSIS

*Plain Error Review.*

Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. *Wilson v. Wilson*, 23 Neb. App. 63, 867 N.W.2d 651 (2015). Any party who fails to properly identify and present its claim does so at its own peril. *Id.*

Section 2-109(D)(1)(d), (e), and (f) of the Rules for Appellate Practice requires a separate section for assignments of error, designated as such by a heading, and also requires that the section be located after a statement of the case and before a list of controlling propositions of law. *Wilson v. Wilson, supra*. The rule requires that the assignments of error section include a separate and concise statement of each error the party contends was made by the trial court. *Id.* Each assignment of error shall be separately numbered and paragraphed, bearing in mind that consideration of the case will be limited to errors assigned and discussed. *Id.*

Appellants' brief does not contain a separate assignments of error section. Rather, the "Summary of Argument" section of its brief, as well as the subheadings of its "Argument" section, state how the court erred. The Supreme Court has repeatedly held that assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of § 2-109(D)(1)(e). *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014); *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011). In addition, the "Summary of Argument" section is a separate required section from the assignments of error section. See § 2-109(D)(1)(h).

Where a party fails to comply with the court rules requiring a separate section setting forth the assignments of error, an appellate court may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings for plain error. *Wilson v. Wilson, supra.* The decision to proceed on plain error is at the discretion of the appellate court. *Id.* We choose to review the record for plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

Appellants argue generally that the compensation court erred when it found Beason sustained compensable injuries arising out of and in the course of his employment. Specifically, they suggest that his wrist and hand injuries were not related to his work accident. Appellants argue that the court improperly relied on Crockett's medical opinions, suggesting that there are deficiencies in his opinions, and that the court should have relied on Ichtertz's medical opinions.

The parties presented conflicting expert medical opinions. The compensation court adopted Crockett's opinions and disregarded Ichtertz's opinions. In support of its decision, the court reviewed the evidence presented and made detailed findings in its opinion. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019). Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court. *Hintz v. Farmers Coop. Ass'n*, 297 Neb. 903, 902 N.W.2d 131 (2017). Upon our plain error review, there is no reason to disturb the compensation court's findings in regard to the medical opinions or its decision that Beason sustained compensable injuries arising out of and in the course of his employment.

Further, appellants take issue with the compensation court determining that Beason's hand and wrist injuries were related to his work injury, and then further stating that even if the hand and wrist injuries were not related, future medical care for Beason's carpal tunnel surgery would still be covered as "reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury." See Neb. Rev. Stat. § 48-120 (Cum. Supp. 2020). This was clearly dicta offered by the compensation court and does not conflict with or change its finding that Beason's hand and wrist injuries were related to his work injury.

After reviewing the entirety of this record, we find no error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. Accordingly, we affirm the findings of the compensation court challenged by appellants.

*Cross-Appeal: Failure to Award Waiting Time Penalties.*

In his cross-appeal to this court, Beason asserts that the compensation court erred in finding that a reasonable controversy existed and, therefore, that he was not entitled to any waiting-time penalties under § 48-125. Section 48-125 authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation benefits. *Davis v. Crete Carrier Corp.*, 15 Neb. App. 241, 725 N.W.2d 562, (2006), *aff'd on other grounds*, 274 Neb. 362, 740 N.W.2d 598 (2007). Whether a reasonable controversy exists under § 48-125 is a question of fact. *Id.* A reasonable controversy under § 48-125 may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Davis v. Crete Carrier Corp., supra*. To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation. *Davis v. Crete Carrier Corp., supra*.

Beason argues that Ichtertz's opinions were so deficient that they failed as a matter of fact and as a matter of law to create a reasonable controversy. He argues that Ichtertz did not consider or apply the correct causation standard required when there is an aggravation of a preexisting condition involved in a workers' compensation claim, as was present here. Beason also argues that Ichtertz mischaracterized Beason's injury as a repetitive trauma claim, not an acute injury, in complete disregard to the undisputed facts of the case.

The compensation court noted Ichtertz's reference to repetitive trauma as a cause of the injury despite Beason telling him that using the squeegee in a forceful fashion had caused his pain. The compensation court noted that Ichtertz's reason for discounting any claim of a traumatic injury was due to the fact that he did not find objective evidence of a labral tear and instead focused on the degenerative changes in the shoulder and carpal tunnel. The compensation court also noted that Ichtertz mentioned several times that Beason may have exacerbated or irritated his underlying preexisting condition through his work, but he felt any such contribution was temporary. The compensation court also stated that it understood why appellants chose to obtain a second opinion after Crockett recommended treatment for carpal tunnel because at that point there had been no indication that Beason had injured his wrist in the work accident. The court concluded that it was a close call, but that an award of waiting time penalties and attorney fees was not appropriate in this case.

The factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed by an appellate court unless clearly wrong. See *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). After considering the evidence in the light most favorable to appellants, resolving every controverted fact in favor of appellants, and giving appellants the benefit of every inference reasonably deducible from the evidence, we conclude that the compensation court's finding that a reasonable controversy existed was not

clearly wrong. See *id.* Accordingly, Beason was not entitled to waiting time penalties, interest, and attorney fees pursuant to § 48-125. His assignment of error on cross-appeal fails.

CONCLUSION

We find no plain error in the compensation court's finding that Beason sustained a compensable injury arising out of and in the course of his employment, and that he was entitled to temporary total disability benefits and future medical care. We also conclude that the court was not clearly wrong in finding a reasonable controversy regarding timing of payments and that Beason was not entitled to waiting time penalties, interest, and attorney fees pursuant to § 48-125. The compensation court's award is affirmed in its entirety.

AFFIRMED.