JOHN DAVIS, APPELLEE AND CROSS-APPELLANT, V. CRETE CARRIER CORPORATION AND TRANSPORTATION CLAIMS, INC., ITS WORKERS' COMPENSATION INSURER, APPELLANTS AND CROSS-APPELLEES.

740 N.W.2d 598

Filed October 26, 2007. No. S-05-1328.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Raymond P. Atwood, Jr., of Atwood, Holsten & Brown, P.C., L.L.O., for appellees.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

John Davis filed a motion in the Nebraska Workers' Compensation Court against Crete Carrier Corporation and its workers' compensation insurer, Transportation Claims, Inc. (collectively Crete Carrier). Davis sought to assess waiting-time penalties, interest, and attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2004). Davis alleged that Crete Carrier unilaterally stopped paying temporary total disability benefits awarded under a February 2, 1993, award on rehearing. Davis asserted entitlement to ongoing temporary total disability benefits from the time his temporary total disability benefits were stopped until the hearing on the motion, or at least when he filed the motion. The single judge denied Davis' motion. Davis appealed and Crete Carrier cross-appealed to the compensation court three-judge review panel, which reversed. The review panel held, citing *ITT Hartford v. Rodriguez*,[1] *Starks v. Cornhusker Packing Co.*,[2] and *Hagelstein v. Swift-Eckrich*,[3] that there must be a hearing to terminate benefits and that benefits may not be summarily terminated, as was done in this case.

---

[1] *ITT Hartford v. Rodriguez*, 249 Neb. 445, 543 N.W.2d 740 (1996).

[2] *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

[3] *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001).

Crete Carrier appealed to the Nebraska Court of Appeals, which affirmed in part, and in part reversed.[4] The Court of Appeals held that the November 1993 order, based upon the stipulation of the parties, modified the duration of the prior award and that, therefore, no specific application was necessary because the award was modified by agreement of the parties as set forth in Neb. Rev. Stat. § 48-141 (Reissue 2004). Davis now seeks further review from this court.

## BACKGROUND

Davis sustained a compensable back injury on March 26, 1989, while employed by Crete Carrier Corporation. On February 2, 1993, after other proceedings not relevant to the present appeal, the review panel entered an award on rehearing. With regard to disability, the review panel determined in paragraph II of the award as follows:

> As a result of said accident and injury [Davis] incurred medical and hospital expense [sic] and was temporarily totally disabled from and including March 31, 1989 to and including April 5, 1991, a period of 105-1/7 weeks, and thereafter sustained a 35 percent permanent partial disability to the body as a whole from and including April 6, 1991 to and including June 14, 1991, a period of 10 weeks and thereafter was again temporarily totally disabled from and including June 15, 1991 to the date of this rehearing on September 28, 1992, is still temporarily totally disabled and will remain temporarily totally disabled for an indefinite future period of time.

In paragraph III of the award, the review panel stated in pertinent part, "When [Davis'] total disability ceases, he shall be entitled to the statutory amounts of compensation for any residual permanent partial disability due to this accident and injury."

In paragraph IX of the award, the review panel stated, "[Davis] is still entitled to vocational rehabilitation services at such time as he is able to participate in said services. If the parties are unable to eventually agree on the nature and/or extent of said

---

[4] *Davis v. Crete Carrier Corp.*, 15 Neb. App. 241, 725 N.W.2d 562 (2006).

vocational rehabilitation services, either party may request a hearing on this issue." And in paragraph XII of the award, the review panel stated, "When [Davis'] total disability ceases if thereafter the parties cannot agree on the extent of [Davis'] disability, if any, then a further hearing may be had herein on the application of either party."

On November 23, 1993, one of Davis' treating physicians opined that Davis had reached maximum medical improvement and had a 25-percent medical impairment rating of the body as a whole. On approximately the same date, the single judge entered an order stating that "[p]ursuant to the stipulation of [Davis] and [Crete Carrier], received November 18, 1993, [Crete Carrier] is hereby ordered to pay to [Davis] temporary disability compensation while [Davis] is undergoing vocational rehabilitation and maintaining satisfactory progress in the plan of which the stipulation is a part." The parties' actual stipulation is not contained in the record before this court.

The record shows that Davis participated in a training program at a motorcycle mechanics' institute in Phoenix, Arizona, from December 13, 1993, through October 28, 1994. On October 29, Crete Carrier began paying Davis permanent partial disability benefits. On December 29, 1994, after paying 300 weeks of benefits, Crete Carrier stopped all disability payments to Davis. This cessation of benefits was done without a hearing before the compensation court. Neither Crete Carrier nor Davis filed a petition to modify the February 2, 1993, award on rehearing.

On October 2, 2003, 9 years after payments ceased, Davis filed a motion seeking an order to assess waiting-time penalties, interest, and attorney fees pursuant to § 48-125. Davis alleged that on February 2, 1993, he received a running award of temporary total disability benefits, and that in 1994, Crete Carrier unilaterally stopped paying such benefits to him. Davis alleged that Crete Carrier was in arrears and liable to him for such delinquent benefits from the date of termination of payment to the date of the hearing on his motion. Davis further alleged that there was no reasonable controversy regarding Crete Carrier's liability to him and that Crete Carrier was, therefore, also liable to him for waiting-time penalties, interest, and attorney fees

for all delinquent payments due. Davis asked the single judge to sustain his motion, determine the delinquencies of Crete Carrier, and order Crete Carrier to pay waiting-time penalties, interest, and attorney fees.

On May 5, 2005, the single judge entered an order overruling Davis' motion. In its order, the single judge stated that it is significant that the February 1993 award on rehearing provided that Davis was temporarily totally disabled " 'to the date of this rehearing on September 28, 1992, is still temporarily totally disabled and will remain temporarily totally disabled for an indefinite future period of time.' " The single judge found that when Davis reached maximum medical improvement as established by a treating physician on November 23, 1993, Davis was no longer temporarily totally disabled. At that point, he became permanently disabled, and the extent and nature of that permanent disability would be an issue to be decided by the compensation court, if necessary. The single judge found that the November 18 order entered pursuant to a stipulation by the parties did nothing to change the analysis set forth above except for continuing temporary disability payments until Davis finished the agreed-upon and court-ordered vocational retraining.

Davis argued to the single judge that under *Sheldon-Zimbelman v. Bryan Memorial Hosp.*[5] and *Starks*,[6] it is required that Crete Carrier file an application to modify the award on rehearing before terminating benefits. The single judge found, however, that those cases dealt with awards of permanent disability, not temporary disability, and did not apply. The single judge stated:

> Such a result would leave this Court subjected to hundreds, if not thousands, of potential modification actions which would need to be filed before various plaintiffs attained maximum medical improvement in order to change the benefit amounts on the date of maximum medical improvement. Such an interpretation is simply not a feasible interpretation of <u>Sheldon-[Z]imbelman</u> and <u>Starks</u>,

---

[5] *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000).

[6] *Starks v. Cornhusker Packing Co., supra* note 2.

*supra*[,] and has never been applied by this Court for running awards of temporary total disability.

The single judge concluded that when a running award of temporary total disability is entered, a hearing is not necessary unless the parties disagree about the extent and nature of the permanent partial disability.

The single judge also found that under Neb. Rev. Stat. § 48-121(2) (Reissue 2004), unless an injured employee is permanently and totally disabled, the employee's entitlement to benefits for partial disability is limited to a total of 300 weeks, less any weeks of total disability indemnification received. The single judge found that Crete Carrier fulfilled its statutory obligation under the language of the award on rehearing. The single judge stated that when Davis attained maximum medical improvement on November 23, 1993, he was not permanently and totally disabled. The judge noted that Davis was able to successfully complete his vocational rehabilitation program and that he is not entitled to any additional benefits. As to Davis' claim for waiting-time penalties, the single judge found that a reasonable controversy existed as to Crete Carrier's obligation to pay additional indemnification benefits to Davis after 300 weeks of payments were made.

Davis filed an application for review with the three-judge review panel of the compensation court. The review panel reversed the single judge's decision and remanded the matter. The review panel found that Nebraska case law requires a hearing to terminate benefits and that benefits may not be summarily terminated, as was done in this case. The review panel further found that *Sheldon-Zimbelman* and *Starks* set forth the correct statement of the law requiring a modification application to terminate payment of benefits under an award.

Crete Carrier appealed the review panel's decision to the Court of Appeals, which reversed. Without directly addressing the applicability of *Sheldon-Zimbelman* and *Starks*, the Court of Appeals held that the November 1993 order was an agreed-upon modification which satisfied the requirements of § 48-141. After noting that the meaning of the November order was a matter of law, the Court of Appeals concluded that the language in the order specifying temporary total disability compensation

would be paid "'while . . . undergoing the vocational rehabilitation plan'" changed the duration of Davis' temporary total disability.[7] Davis now seeks further review from this court.

## ASSIGNMENTS OF ERROR

Davis assigns that the Court of Appeals erred in (1) finding that Crete Carrier properly preserved the issue of whether the single judge's November 1993 order modified the review panel's February 1993 award on rehearing and failing to find that this issue was waived and res judicata; (2) holding that the stipulation of the parties and the November order constituted a § 48-141 judicially approved agreement that modified the duration of Davis' running temporary total disability under the February award on rehearing and that specific § 48-141 application was not required to terminate Davis' temporary total disability benefits; (3) reversing the review panel's remand to the single judge to determine and enforce the benefits due under the February award; (4) failing to award Davis waiting-time penalties, interest, and attorney fees; and (5) failing to award Davis attorney fees in all lower levels of this proceeding.

## STANDARD OF REVIEW

▪ Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is no sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[8]

▪ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[9] An

---

[7] *Davis v. Crete Carrier Corp., supra* note 4, 15 Neb. App. at 255, 725 N.W.2d at 574 (emphasis omitted).

[8] *Hagelstein v. Swift-Eckrich, supra* note 3.

[9] *Id.*

appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[10]

## ANALYSIS

### PRESERVATION OF ISSUE

Davis first contends that the Court of Appeals erred in finding that Crete Carrier's assignments of error were sufficiently definite and certain to preserve for appellate review the question of whether the November 1993 order and the vocational rehabilitation stipulation modified the February 1993 award on rehearing. Davis argues that on September 30, 2005, the review panel held that the stipulation of the parties and the November 1993 order did not act "'as an "agreement of the parties" to terminate benefits for a running award pursuant to Neb. Rev. Stat. §48-141.'"[11] Davis argues that Crete Carrier did not assign this finding as an error on appeal to the Court of Appeals as required by Neb. Ct. R. of Prac. 9D(1)(e) (rev. 2006) and Neb. Rev. Stat. § 25-1919 (Reissue 1995).

■ The general rule is that an appellate court will consider only those errors specifically assigned in a lower court and again assigned as error on appeal to the appellate court.[12] In *Dietz v. Yellow Freight Sys.*,[13] we stated that this rule is also applicable in workers' compensation cases. Thus, in reviewing decisions of the compensation court, an appellate court will consider only those errors specifically assigned to the review panel and then reassigned on appeal.[14]

On appeal to the review panel, Davis assigned, consolidated and restated, that the single judge erred in failing to enforce the February 1993 award on rehearing and in failing to order Crete Carrier to pay continuing disability benefits and the requisite penalties under § 48-125. In reversing the single judge's decision, the review panel found that the stipulation between

---

[10] *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra* note 5.

[11] Supplemental brief on petition for further review for appellee at 17.

[12] See *Dietz v. Yellow Freight Sys.*, 269 Neb. 990, 697 N.W.2d 693 (2005).

[13] *Id.*

[14] See *id.*

the parties and the compensation court's November 1993 order did not act as an agreement of the parties to terminate benefits. The review panel found instead that the stipulation and order allowed Davis to receive indemnity benefits while undergoing vocational rehabilitation. The review panel further found, based on Nebraska case law,[15] that a hearing must be held to terminate benefits and that benefits may not be summarily terminated. The review panel then found that the single judge misstated the law in Nebraska to be that an application to modify is not required when terminating temporary total disability benefits. The review panel concluded that regardless of whether a party is terminating temporary total disability benefits or permanent total disability benefits, a modification application to terminate benefits under such an award is needed.

To the Court of Appeals, Crete Carrier broadly assigned as error the review panel's ruling that Crete Carrier had not properly paid benefits to Davis based on the February 1993 award on rehearing and the November order. As noted by the Court of Appeals, encompassed within this broad assignment of error was the question of whether the review panel incorrectly found that an application to modify the February award on rehearing was necessary to terminate Davis' temporary total disability benefits. Accordingly, we conclude that this assignment of error is without merit.

### MODIFICATION REQUIREMENT

In Davis' second and third assignments of error, he contends that the Court of Appeals erred in determining that the stipulation and November 1993 order constituted a § 48-141 judicially approved agreement which modified the February 1993 award on rehearing and Davis' temporary total disability award. Davis further contends that the Court of Appeals erred in concluding that a § 48-141 application is not required to terminate Davis' benefits. Davis claims error in the Court of Appeals' reversing the review panel's remand of the matter to the single judge to determine and enforce the benefits due under the February

---

[15] See, *Hagelstein v. Swift-Eckrich, supra* note 3; *Starks v. Cornhusker Packing Co., supra* note 2; *ITT Hartford v. Rodriguez, supra* note 1.

award on rehearing. The broad question presented by these assignments of error is whether Crete Carrier complied with the proper procedures when terminating Davis' temporary total disability benefits.

■ Our case law has established that as a general rule, an employer may not unilaterally terminate a workers' compensation award of indefinite temporary total disability benefits absent a modification of the award of benefits. For example, in *Starks*,[16] we held that an employer was required to pay an employee permanent disability benefits until an application to modify the original award was filed. In *Starks*, the single judge determined that the employee was permanently and totally disabled. Approximately 2 years later, the employer unilaterally terminated the employee's benefits. The employee filed a motion with the compensation court requesting an order requiring the employer to resume making total disability payments. The employer then filed an application for modification, claiming the employee's disability ceased the day after payments were terminated.

We stated on appeal, "[A] workers' compensation award is in full force and effect, as originally entered, until the award is modified pursuant to the procedure set forth in § 48-141. . . . [E]mployers are prohibited from unilaterally modifying workers' compensation awards."[17] We concluded that the employer in *Starks* had unilaterally terminated the employee's benefit payments. We further concluded that the employer owed the employee total and permanent disability payments from the time it unilaterally terminated benefit payments until the date the employer filed an application for modification.

Similarly, we held in *Hagelstein*[18] that an employer had an obligation to pay an injured employee the originally ordered workers' compensation benefits until an application to modify the award of benefits was filed. In *Hagelstein*, the single judge found that the employee was totally disabled and was entitled to

---

[16] *Starks v. Cornhusker Packing Co., supra* note 2.

[17] *Id.* at 38, 573 N.W.2d at 763-64 (citation omitted).

[18] *Hagelstein v. Swift-Eckrich, supra* note 3.

benefits for an indefinite period. Thereafter, the employee filed a petition with the compensation court alleging that his employer had ceased paying total disability and had begun paying permanent partial disability on June 19, 1995. The single judge found that the employee had reached maximum medical improvement on April 24 and ordered the employer to pay reduced benefits as of that date. The review panel reversed the portion of the trial court's order requiring payment of permanent partial disability beginning in April and ordered payments to commence on March 6, 1996, the day on which the employee's petition was filed.

On appeal, we treated the employer as the applicant for modification and the date the employer filed its answer as the "application" date. We explained that it was in its answer that the employer set out its claim requesting a modification of the award of temporary total disability benefits. And we reiterated our statements from Starks,[19] that an employer is prohibited from unilaterally modifying a workers' compensation award and that an employer's unilateral cessation of benefits is not the basis for the modification of an award of benefits.

We believe the present case presents a factually distinct case from Starks and Hagelstein. Paragraph III of the February 1993 award on rehearing provided in pertinent part, "When [Davis'] total disability ceases, he shall be entitled to the statutory amounts of compensation for any residual permanent partial disability due to this accident and injury." Paragraph XII further provided, "When [Davis'] total disability ceases if thereafter the parties cannot agree on the extent of [Davis'] disability, if any, then a further hearing may be had herein on the application of either party."

The terms of the February 1993 award on rehearing are clear. Davis, like the employees in Starks and Hagelstein, was awarded temporary total disability benefits for an indefinite period of time. Davis' award on rehearing further provided, however, that when Davis' total disability ceased, he was entitled to any statutory amounts of permanent partial disability benefits due. Under the terms of this award, if Davis and Crete

---

[19] Starks v. Cornhusker Packing Co., supra note 2.

Carrier could not agree on the extent of Davis' permanent partial disability benefits, either party could request a hearing on the matter. Thereafter, as previously noted in this opinion, an order file stamped November 18, 1993, was entered directing Crete Carrier to pay Davis temporary total disability benefits while Davis was undergoing vocational rehabilitation and making satisfactory progress. This order was based upon a stipulation between the parties. On November 23, a treating physician opined that Davis had reached maximum medical improvement. Then, on October 29, 1994, following Davis' completion of his vocational rehabilitation program, Crete Carrier ceased paying Davis temporary total disability payments. At that point, there were only approximately 8⅔ weeks left of the 300 weeks of permanent partial disability benefits due to Davis, for which he was paid.

Based upon the facts of this case, we conclude that no application to modify the award was needed to terminate Davis' temporary total disability benefits and to begin payment of his permanent partial disability benefits. Under the terms of the award, had Davis wished to dispute the termination of his temporary total disability benefits, he could have requested a hearing with the compensation court.

### WAITING-TIME PENALTIES, INTEREST, AND ATTORNEY FEES

In Davis' final assignments of error, he contends that the Court of Appeals erred in failing to award him waiting-time penalties, interest, and attorney fees. Section 48-125 authorizes a 50-percent penalty payment of compensation and an attorney fee where there is no reasonable controversy regarding an employee's claim for workers' compensation benefits. Having determined that Crete Carrier properly terminated Davis' temporary total disability benefits, we conclude that the Court of Appeals correctly determined that a reasonable controversy existed with respect to Crete Carrier's obligation to pay additional indemnity benefits.

### CONCLUSION

For the reasons discussed above, we affirm the judgment of the Court of Appeals. Although our reasoning differs in part

from that employed by the Court of Appeals, this court will not reverse a judgment which it deems to be correct.[20]

AFFIRMED.

HEAVICAN, C.J., not participating.

[20] See *Mumin v. Dees*, 266 Neb. 201, 663 N.W.2d 125 (2003).