John Jacobitz, appellee, v. Aurora
Cooperative, appellant.
___ N.W.2d ___

Filed July 10, 2015.    No. S-14-903.

1. **Workers' Compensation: Appeal and Error.** An appellate court is
   obligated in workers' compensation cases to make its own determina-
   tions as to questions of law.
2. ____: ____. Upon appellate review, the findings of fact made by the trial
   judge of the compensation court have the effect of a jury verdict and
   will not be disturbed unless clearly wrong.
3. ____: ____. Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014),
   an appellate court may modify, reverse, or set aside a Workers'
   Compensation Court decision only when (1) the compensation court
   acted without or in excess of its powers; (2) the judgment, order, or
   award was procured by fraud; (3) there is no sufficient competent evi-
   dence in the record to warrant the making of the order, judgment, or
   award; or (4) the findings of fact by the compensation court do not sup-
   port the order or award.
4. **Workers' Compensation: Proof.** In a workers' compensation case, the
   claimant must establish that the injury for which compensation is sought
   arose out of and in the course of employment.
5. **Workers' Compensation: Employer and Employee.** Recreational or
   social activities are within the course of employment when (1) they
   occur on the premises during a lunch or recreation period as a regu-
   lar incident of the employment; or (2) the employer, by expressly or
   impliedly requiring participation, or by making the activity part of
   the services of an employee, brings the activity within the orbit of
   the employment; or (3) the employer derives substantial direct ben-
   efit from the activity beyond the intangible value of improvement in
   employee health and morale that is common to all kinds of recreation
   and social life.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Reversed and remanded for further proceedings.

Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellant.

Jacob M. Steinkemper, of Steinkemper Law, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

McCORMACK, J.

## NATURE OF CASE

John Jacobitz was injured when he fell off a truck following a customer appreciation supper for his employer, Aurora Cooperative (the Co-op). The dispute is whether Jacobitz' injury occurred in the scope and course of employment, thus making the Co-op liable for the injury. The Nebraska Workers' Compensation Court found that Jacobitz was injured in the course of his employment. The Co-op appeals.

## BACKGROUND

### CUSTOMER APPRECIATION SUPPER

The Co-op owns grain elevators in various locations in southeast and south central Nebraska. The location in Ong, Nebraska, is one of the Co-op's elevators, which buys and sells grain, and sells seed, fertilizer, and other chemicals such as herbicides and insecticides.

On August 20, 2010, the Co-op in Ong held a customer appreciation supper. The supper was organized by Jerry Overturf, the location agronomy manager of the Ong location. Overturf planned the supper with the permission of his supervisor, the Co-op's area manager. Overturf invited farmers that had done business with the Ong location in the previous year. The purpose of the supper was to thank the Ong location's customers for their business during the previous year.

The Ong location sent a total of 17 invitations to customers. The invitation was printed on company letterhead on a one-page flyer that was folded, addressed, and mailed.

The Ong location's vendors sponsored the supper and paid for all of the food and drinks that were served. One of the vendors, Kruger Seeds, also provided a large smoker to cook the meat that was served. The smoker was mounted on a trailer and had to be towed behind a vehicle. Overturf towed and parked the smoker at the Ong Community Building prior to the supper on August 20, 2010.

The Co-op scheduled the supper to begin at 6 p.m. The supper was held at the Ong Community Building, which is located on Main Street in Ong. Food began to be served at 6 p.m., when the guests began to arrive. Approximately 12 farmers and their spouses attended the supper.

Six employees from the Ong location were invited to the supper. These Co-op employees include Dennis Hansen, the location grain manager; Rick Johnson, the sprayer operator; Dan Eberhardt, a general laborer; Bill Mountford, the facility operator; Karen Corliss, a secretary; and Jacobitz, a general laborer. Overturf testified that he invited the employees to the supper for "[m]orale," but that attendance was not required and he did not take attendance to determine who appeared and who did not appear.

All of the employees of the Ong location attended the supper except for Mountford and Corliss. Employees were not compensated for attending the supper. None of the employees who attended were asked to help or actually helped serve the food. Neither were the employees asked to help clean up. However, Hansen, the other manager in attendance, did help to transport meat from the smoker to the buffet line.

### JACOBITZ

Jacobitz began employment with the Co-op in 2010 as a general laborer. The Co-op classified Jacobitz as a temporary part-time worker.

Jacobitz delivered the event invitations for the supper to the post office during his work hours. Jacobitz and Hansen helped set up for the supper during work hours by setting up tables and putting on table coverings in the community building.

There was conflicting testimony regarding how Overturf invited Jacobitz to the supper. But, Jacobitz recalled that Overturf told him it was to Jacobitz' benefit to be there. Jacobitz testified that he recalled Overturf telling him to "[g]o home, clean up, [and] head back" and "[n]eed your help." When asked what his perception of his responsibility was to be at the party, Jacobitz answered, "I didn't know . . . the trouble I would get into for not showing up." Further, Jacobitz answered that he went to the function as part of his job. Overturf testified that the employees "were told they could attend; I did not ask them to attend." In regard to Jacobitz in particular, Overturf testified that "[Jacobitz] was told the supper was going on; he was welcome to come eat and was not required to be there."

Jacobitz clocked out of work at approximately 5:05 p.m. the evening of the supper. At the time, Jacobitz lived about 30 miles from the Ong location. Jacobitz testified that he drove home that evening after work, cleaned up, played with his children, and drove back to the Ong location for the supper.

When he returned, Jacobitz did not assist in preparing the food, did not serve the food, and did not help clean up at the community building. Overturf testified that he did not observe Jacobitz talking with any of the farmers or customers at the supper. However, on redirect, Overturf admitted that he was outside the building while he was cooking, so he did not specifically see what was going on inside at the supper. Johnson spoke with many or all of the customers present at the supper "just to be friendly," but did not testify whether Jacobitz had spoken with any customers. Due to his injuries, Jacobitz does not have a clear memory of his own activities at the supper.

ACCIDENT

Overturf finished cooking by 7 p.m. Overturf shut down the smoker, retrieved his personal truck, and attached the smoker to his truck so that he could tow the smoker to storage. Hansen and Jacobitz walked over to Overturf as he was hooking the smoker to his truck. Neither Hansen nor Jacobitz helped to hook the smoker to Overturf's truck.

Overturf towed the smoker over to a fire hydrant to wash out the smoker. Hansen and Jacobitz walked, following Overturf to the fire hydrant. After Overturf turned on the hose, Overturf handed the hose to Jacobitz so that Overturf could pull a log out of the firebox. Jacobitz then sprayed the log as it was lying on the ground and washed out the firebox.

Overturf then drove the smoker a short distance to a shed located on the Co-op's property, where he intended to store the smoker until the Kruger Seeds' representative could pick the smoker up. Hansen and Jacobitz walked to the shed and met Overturf there. Hansen opened the shed door, and Overturf backed the smoker into the shed, unhooked the smoker, and drove his truck back out of the shed.

Overturf testified that as he drove his truck out of the shed, Jacobitz stated to Hansen that he was going to ride back to the community building and jumped onto the bed of Overturf's truck. However, Hansen testified that when Overturf drove his truck out of the shed, "[Jacobitz] was riding in the back of the pickup, and they said [Hansen] could ride along." Hansen declined the offer to ride because he needed to throw some trash from the party into the Dumpster. Overturf drove to Main Street, took a right onto Main Street, and proceeded to the community building, which was about a block away on the left. As he drove, Overturf noticed out of his rearview mirror that Jacobitz was lying in the middle of Main Street.

Jacobitz sustained head injuries as a result of his fall from Overturf's truck. No one knows how Jacobitz fell out of the truck, and Jacobitz does not remember how he fell from the truck.

Procedural History

The compensation court bifurcated the issues in the case. The compensation court conducted the first trial to determine whether the Co-op was liable for Jacobitz' injury, but the issue of damages was reserved for a later time when Jacobitz reached maximum medical improvement. On January 28, 2013, the compensation court concluded that Jacobitz was injured in the scope and course of his employment.

In support of its ruling, the compensation court found that Jacobitz "believed he had to attend, or that it would at least be in his best interest to attend." However, the court's final holding that Jacobitz was injured in the course of employment was not grounded on a finding that Jacobitz was either expressly or impliedly required to attend the supper. Instead, the compensation court based its holding on the finding that the Co-op received a substantial benefit from Jacobitz' attendance at the event. The compensation court stated: "The finding is that the [Co-op] received a substantial benefit when [Jacobitz] attended the appreciation night supper and visited with customers and was a fine representative of the [Co-op]." The compensation court also stated that the Co-op "received benefit because at the time [Jacobitz] was injured, he had just completed helping put away the smoker used to cook the meat at the Appreciation Night supper."

The determination of monetary benefits was reserved for a further trial. The Co-op appealed the order on liability to this court.[1] We found that because the compensation court's order had resolved only the question of the employer's liability and not the determination of benefits award, the order was not a final, appealable order.[2] On remand, the compensation court determined the benefits due to Jacobitz as a result of his injuries. The Co-op again appeals the issue of liability.

---

[1] *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013).

[2] *Id.*

STANDARD OF REVIEW

[1,2] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[3] Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[4]

[3] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is no sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[5]

ANALYSIS

The issue in this case is whether Jacobitz' injuries arose out of and in the course of employment. The Co-op argues that it did not derive a substantial direct benefit from Jacobitz' attendance at the supper. Particularly, the Co-op argues that the compensation court erred in finding that the injury arose out of and in the course of employment because the Co-op derived a "substantial benefit," when the correct legal standard for a finding that the event arose in the course of employment is a "substantial direct benefit."

[4,5] In a workers' compensation case, the claimant must establish that the injury for which compensation is sought arose out of and in the course of employment.[6] In the case of recreational or social activities incident to employment, we apply the following test to determine whether an injury arose out of and in the course of employment:

---

[3] *Miller v. Regional West Med. Ctr.*, 278 Neb. 676, 772 N.W.2d 872 (2009).

[4] *Torres v. Aulick Leasing*, 261 Neb. 1016, 628 N.W.2d 212 (2001).

[5] *Davis v. Crete Carrier Corp.*, 274 Neb. 362, 740 N.W.2d 598 (2007).

[6] *Gray v. State*, 205 Neb. 853, 290 N.W.2d 651 (1980).

"Recreational or social activities are within the course
of employment when (1) They occur on the premises
during a lunch or recreation period as a regular incident
of the employment; or (2) The employer, by expressly
or impliedly requiring participation, or by making the
activity part of the services of an employee, brings
the activity within the orbit of the employment; or (3)
The employer derives substantial direct benefit from the
activity beyond the intangible value of improvement in
employee health and morale that is common to all kinds
of recreation and social life."[7]

Whether or not the activity falls within one of the enumer-
ated categories is reviewed as a factual finding.[8] As we have
stated, we "may reverse or modify the findings, order, award,
or judgment of the original hearing only on the grounds that
the judge was clearly wrong on the evidence or the decision
was contrary to law."[9]

The Co-op argues that the compensation court applied the
wrong legal standard in its finding that the Co-op received a
"substantial benefit" and awarding recovery, when the correct
legal standard for the test is a "substantial direct benefit."[10]
We agree.

In *Gray v. State*,[11] the employee's injury was found to not
be in the "course of employment." In *Gray*, the injury was
sustained in a car accident while the employee was on the way
to a meeting of people within his career field. Though some
of these meetings were required by the employee's employ-
ment, this meeting was not expressly required, and it was

---

[7] *Shade v. Ayars & Ayars, Inc.*, 247 Neb. 94, 97, 525 N.W.2d 32, 34 (1994),
citing *Gray v. State, supra* note 6.

[8] *Shade v. Ayars & Ayars, Inc., supra* note 7.

[9] *Id.* at 99, 525 N.W.2d at 35. See, also, *Gray v. State, supra* note 6.

[10] See *Gray v. State, supra* note 6.

[11] *Id.*

characterized by one of the planners as "primarily a social event."[12] We stated that without a requirement to be present at the meeting, the employer "did not benefit either directly or substantially from [the employee's] participation therein."[13] We further stated that a benefit to the employer from social functions "was neither substantial nor direct," because the benefit was "little, if any" to the employer.[14]

In *Shade v. Ayars & Ayars, Inc.*,[15] the employee was injured at a company picnic. There, the compensation court found, and we agreed, that the employee was not entitled to benefits, because he had failed to show that the company had received "'any substantial direct benefit from the activity "picnic."'"[16]

In our cases that have applied the "substantial direct benefit" test, we have made clear that the standard is a "substantial direct benefit" and not merely a "substantial benefit." Though it is plain that the benefit must be both substantial and direct, we have not yet defined how "direct" fits into the analysis of a "substantial direct benefit."[17] Merriam-Webster's dictionary defines "direct" as "stemming immediately from a source," "natural, straightforward," "marked by absence of an intervening agency, instrumentality, or influence," and "characterized by close logical, causal, or consequential relationship."[18] Black's Law Dictionary defines "direct" as "[f]ree from extraneous influence; immediate," or "[t]o cause (something or someone) to move on a particular course."[19] Using "direct" as a part of the analysis has importance and must be applied

---

[12] *Id.* at 854, 290 N.W.2d at 652.

[13] *Id.* at 858, 290 N.W.2d at 654.

[14] *Id*. at 859, 290 N.W.2d at 654.

[15] *Shade v. Ayars & Ayars, Inc., supra* note 7.

[16] *Id*. at 96, 525 N.W.2d at 34.

[17] See *Gray v. State, supra* note 6.

[18] Merriam-Webster's Collegiate Dictionary 327 (10th ed. 2001).

[19] Black's Law Dictionary 556 (10th ed. 2014).

when determining whether or not an employee was injured in the course of employment. The court erred in failing to consider whether the benefit to the employer was both substantial and direct.

In this case, the compensation court found that the Co-op received a "substantial benefit" from Jacobitz' participation in the supper. In support of that finding, the compensation court found that Jacobitz "visited with customers" at the supper. The compensation court did not consider whether that substantial benefit was direct, as required by our prior cases.[20]

## CONCLUSION

Finding that the compensation court applied the wrong legal standard, we reverse the judgment and remand the cause for an application of the correct standard consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[20] See, *Shade v. Ayars & Ayars, Inc., supra* note 7; *Gray v. State, supra* note 6.