IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


LILJESTRAND V. DELL ENTERS.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ADAM LILJESTRAND, APPELLEE,

V.

DELL ENTERPRISES, INC., DOING BUSINESS AS THE DUNDEE DELL,
AND LIBERTY MUTUAL INSURANCE, APPELLANTS.


Filed May 25, 2021.    No. A-20-695.


Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

Robert Kinney-Walker, of Law Offices of James W. Nubel, for appellants.

Ronald E. Frank and Danielle E. Forsgren, of Sodoro, Mooney, and Lenaghan, for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

The appellants, Dell Enterprises, Inc., and Liberty Mutual Insurance (collectively Dell), appeal from an order of the Nebraska Workers' Compensation Court, wherein the court determined that the appellee, Adam Liljestrand, suffered a compensable injury while employed with Dell and awarded attorney fees. Dell also appeals from separate orders from the compensation court wherein the court denied their motion to recuse and continued two hearings. For the reasons set forth herein, we affirm the decisions of the compensation court.

- 1 -

BACKGROUND

The facts underlying Liljestrand's injury and previous litigation involving these parties are set forth more fully in the Nebraska Supreme Court's opinion in *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014). We reiterate the facts only as relevant to the current appeal.

Liljestrand initially injured his back in September 2001 while employed for Dell as a bartender. Following Liljestrand's injury in 2001, Dell stipulated his injury was work-related and that Liljestrand was entitled to future medical care as was reasonable and necessary to treat his injury. In addition, a vocational rehabilitation specialist concluded that Liljestrand sustained a 60- to 65-percent loss of earning power and recommended that Liljestrand attend college for retraining as a financial advisor. Liljestrand was awarded vocational rehabilitation, which ended in 2004. He secured a job providing financial advice but because of his back pain and the effect of the narcotic pain medications he had to take, he could not perform the work that he secured, due to being groggy and sleepy. He was last employed in 2008.

In 2010, Liljestrand was reexamined and a physician diagnosed Liljestrand with "failed back syndrome" and determined that his condition had deteriorated. The physician believed that Liljestrand was totally disabled. In November 2010, Liljestrand's vocational rehabilitation specialist prepared an updated loss of earning capacity report. Liljestrand sought relief in the compensation court. At the 2011 hearing, the sole issue was the nature and extent of Liljestrand's permanent disability. Prior to this hearing, Liljestrand served Dell with requests for admission. As relevant to this appeal, Dell admitted that on September 5, 2001, Liljestrand injured his back in the scope and course of his employment with Dell. The compensation court initially found that Liljestrand lost all earning power and was entitled to weekly compensation at the rate of $508 per week. After a series of appeals, the matter was remanded back to the compensation court for a new trial in 2014.

Liljestrand subsequently filed an amended petition on June 3, 2014, wherein he alleged that on September 5, 2001, he suffered an injury arising out of and in the course of his employment with Dell. Liljestrand requested that the rights and liabilities of the parties be determined by the compensation court and that he be awarded benefits, including, but not limited to an award of permanent total disability, reimbursement for any and all dental and medical expenses, and an award of future reasonable and necessary medical and dental expenses which he may be entitled to. In their answer to the amended petition, Dell admitted that Liljestrand injured himself in an accident arising out of and in the course of his employment with Dell, but denied that he suffered consequential dental injuries.

On September 21, 2016, the parties submitted an application for approval of final lump sum settlement and compromise (the Application). The Application stated that there was "a reasonable controversy with regard to the nature and extent of [Liljestrand's] disability," but that the parties intended to "settle, finalize, and put to rest their dispute with regard only to the nature and extent of [Liljestrand's] disability as a result of the aforementioned accident and injuries." To that end Dell agreed to pay and Liljestrand agreed to accept a lump sum payment of $310,000. The Application for settlement also stated that it was the intention "only to compensate [Liljestrand] for a disputed amount of disability entitlement he may be entitled to, and is not intended to settle

the medical portion of [Liljestrand's] claim, which shall remain open." The Application closes with the following:

> [Liljestrand] fully understands that once approved by the Nebraska Workers' Compensation Court and the amount of consideration has been paid, his claim as set forth above shall be deemed as though dismissed with prejudice with regard to any further claim for indemnity benefits, however, it is the understanding and intent of the parties that [Liljestrand's] claim shall remain open with regard to any and all future reasonable and necessary medical expenses.

According to the Application, if there was a dispute "between future reasonable and necessary medical expenses, [Liljestrand] may present said dispute before the Nebraska Workers' Compensation Court for a determination as to those reasonable and necessary medical expenses and treatment claimed."

The compensation court entered an order "Approving Application for Approval of Final Lump Sum Settlement and Compromise" (Order Approving Application) on October 24, 2016, finding that the Application was made in conformity with Nebraska's workers' compensation laws. Then, the Order Approving Application stated the following:

> IT IS, THEREFORE, ORDERED that the Application for Approval of Final Lump Sum Settlement (leaving medical open) is hereby approved. That upon payment of the sum of $310,000.00 to [Liljestrand], as set forth in said Application, [Dell], its successors, insurers and assigns shall be discharged from all further liability, as to indemnity only, on account of the accident and [Liljestrand's] alleged injuries of September 5, 2001, with the exception of medical expenses. [Dell] will continue to be liable for [Liljestrand's] reasonable hospital, medical and miscellaneous expenses related to the September 5, 2001, incident until such time the Court has approved a further Application regarding an approved Medicare set-aside account as to future medical.

Almost 3 years later, on August 30, 2019, Liljestrand filed a motion to enforce settlement and notice of hearing. Liljestrand alleged that he sought continuing and ongoing medical treatment that was previously approved by Dell. Liljestrand alleged that when he sought repayment from Dell for medical bills he had incurred, pursuant to the terms of the Application, Dell notified him that it would no longer authorize any benefits or payments to him. Liljestrand alleged that the denial and representation of the refusal to pay any further medical benefits would be in violation of the Order Approving Application. In his prayer for relief, Liljestrand "prays for an Order of this Court specifically directing and requiring [Dell] to continue to be liable and responsible for [Liljestrand]'s reasonable hospital, medical, and miscellaneous expenses" related to the September 5, 2001, injury.

Dell filed a "Response to Motion to Enforce" on September 19, 2019, wherein it stated that it disputed the compensability of the underlying claim, thereby making Liljestrand's motion inappropriate. On the same day, Dell also filed a motion to amend asking that it be permitted to amend the answer it had filed to the amended petition in 2014 because Dell stated that they had erroneously admitted that Liljestrand injured himself in an accident arising out of and in the course of his employment with Dell. On September 27, 2019, Dell filed a motion to determine

- 3 -

compensability of the 2001 injury and also filed a motion to withdraw their responses to Liljestrand's request for admissions from March 2010. The compensation court set these motions for a hearing on October 28, 2019.

At the October 28, 2019, hearing, the parties submitted arguments and the compensation court received evidence. Dell conceded that it had previously admitted that Liljestrand's injury was compensable during the 2014 proceedings. However, Dell argued that the Application and the Order Approving Application was not a determination of compensability. As such, Dell asked the compensation court to determine compensability. While Dell conceded that the language in the order approving application was not favorable to their position, they argued that the language stating that they were liable for future medical expenses was basically meaningless. Dell argued that the injury was not compensable; therefore, the future medical expenses should amount to nothing. Dell further argued that in reading the Application in its entirety, there was not an attempt to stipulate to compensability. Liljestrand contended that a lump-sum settlement agreement such as the one the parties entered into, does not need to address compensability because it is a contract between the parties that has to be approved by the compensation court and, under that contract, Dell agreed to be responsible for reasonable and necessary medical expenses arising from the 2001 injury.

The parties also argued about the specific medical bills Liljestrand sought to have paid. Liljestrand submitted into evidence exhibit 35, which was a collection of receipts from prescription medication he contended was related to his injury, but which had not been paid by Dell. Liljestrand also submitted an affidavit which he believed affirmatively demonstrated that the prescription medications referred to in the receipts were related to his work-related injury. Dell argued that there was not sufficient foundation laid to show that these bills were related to Liljestrand's injury. Liljestrand offered to withdraw exhibit 35 and resubmit the bills at a later hearing, subject to the determination of the compensation court as to whether Dell was liable for medical expenses under the order approving application. Liljestrand then reiterated that the hearing was occurring so the court would "reinforce that [Dell] shall pay." However, the court explained that to establish the foundation that the bills were related, "we'll have a telephone conference. . . . We'll do more hearing [sic], and then he can bring in all the records he wants."

After the court's announcement that there would be another hearing, counsel for Dell stated "[i]f you want another hearing, that's fine. I don't need another hearing, Your Honor." Dell's counsel later admitted that he had not examined the specific bills since his argument was simply that they were not compensable. Counsel for Liljestrand asked the compensation court whether he would be required to contact Liljestrand's doctor to say "[t]hese are the same prescriptions I've been prescribing all along for the injuries for which I have treated him that he got hurt in 2001?" The compensation court explained to Liljestrand that "you got to get the records." The court asked Liljestrand's attorney "[w]hy don't you get his medical records? That's usually good enough for me." The compensation court further stated that "I'm telling you to get the records." Dell conceded that the recent prescriptions were "not the main issue here." Finally, after the court reminded him that if the bills were withdrawn, there would be no issue before the court, counsel for Liljestrand concluded that he would "stand on my affidavit, the medical bills. . . . The next time [Liljestrand] has a pile of bills, we'll do it differently."

- 4 -

The compensation court submitted an order on November 14, 2019. The compensation court granted Dell's motion to determine compensability. However, it determined that "compensability will be decided based upon admissions and court orders previously entered. The Court finds that [Liljestrand] is entitled to recover medical expenses."

The compensation court denied Dell's motion to withdraw their admissions. The compensation court determined that Liljestrand would suffer prejudice because Liljestrand had proceeded with the understanding that there was an admission that he was injured in an accident arising out of and in the course of his employment with Dell. In addition, the compensation court determined that Liljestrand would suffer prejudice if these admissions were withdrawn. The compensation court determined that Liljestrand relied on these admissions when he entered into the Application and the Order Approving Application, believing that he was relieved of his burden to prove the compensability of his injury. The compensation court further explained that these admissions resulted in the approval of the Application and it would "cause great prejudice" to Liljestrand to "prove up that the injuries he suffered on September 5, 2001 were compensable."

With respect to the payment of specific medical bills, the compensation court determined that Liljestrand only submitted exhibit 35, a list of medical bills that were primarily prescriptions. The compensation court determined that this was not sufficient for the medical bills to be ordered to be paid under Neb. Rev. Stat. § 48-120 (Cum. Supp. 2020), when there were no medical records to support the relationship of the medical bills to the original injury. Then the compensation court stated that Liljestrand "must submit medical records and/or reports and/or evidence showing that the medical bills in Exhibit 35 were for treatment of injuries in the accident of September 5, 2001," in order for these medical bills to be paid. The compensation court gave Liljestrand until January 10, 2020, to obtain these documents, which would be submitted at a hearing on that date.

On November 20, 2019, Dell filed a "Motion to Recuse and Objection to Further Hearing." Dell argued that the compensation court judge should recuse himself because he acted as an advocate for Liljestrand when he did not issue a ruling on whether the medical bills should be paid in the November 14 order and by specifically outlining the evidence Liljestrand would need to present to be successful. Dell also argued that the compensation court erred in continuing the hearing pursuant to Neb. Rev. Stat. § 48-162.03 (Cum. Supp. 2020), which prohibits the compensation court from granting motions for new trials.

On January 23, 2020, the compensation court denied Dell's motion to recuse. There is nothing in our record which reflects what occurred at the hearing on the motion to recuse. The compensation court continued for a second time the hearing with respect to the payment for medical bills because Liljestrand could not obtain medical reports from a physician. Ultimately, the hearing was set for August 14.

At the August 2020 hearing, the parties made arguments and Liljestrand offered evidence which the compensation court received. The compensation court received exhibit 44, which was a document from Liljestrand's treating physician stating that the prescriptions attached to the document were reasonable and necessary to treat the injury that Liljestrand suffered on September 5, 2001. Dell conceded that they had received this medical report in a timely fashion and ultimately chose not to depose the physician. Nevertheless, Dell maintained that there was not sufficient foundation to order Dell to pay these medical bills. Dell further argued that there "was a bunch of random bills" included in the exhibit. These bills included medical bills for treatment to

Liljestrand's foot and psychiatric treatment. Liljestrand argued that each of the bills was related to the injury, as evidenced by his treating physician. Dell's primary argument at the August 2020 hearing was that the injury was not compensable and that Liljestrand had not sufficiently proven that the injury was compensable.

The compensation court also heard argument with respect to whether attorney fees should be awarded. Counsel for Liljestrand conceded that he was not prepared to present evidence on what the amount should be for the attorney fees and he stated that he assumed that the hearing would be bifurcated to determine what the proper amount of fees should be. Liljestrand argued that Dell was responsible for all reasonable and necessary medical expenses; as such, there was never a question as to whether the injury was compensable. The compensation court agreed with Liljestrand explaining that the order approving application provided that Dell would continue to be liable for Liljestrand's reasonable hospital, medical, and miscellaneous expenses related to the September 5, 2001, incident. The compensation court further stated that as part of the Application and the Order Approving Application, Dell was required to pay the medical bills regardless of whether Dell believed the injury was compensable. Because counsel for Liljestrand did not have evidence demonstrating the specific amount of attorney fees claimed, the compensation court stated that there would be a fee hearing to determine what amount of attorney fees would be reasonable. Dell objected to a further hearing and argued that the compensation court should have awarded attorney fees as part of its order on November 14, 2019.

The compensation court submitted an order on August 17, 2020, which ordered Dell to pay the medical bills detailed in exhibit 44. It determined that there was "absolutely no reason why [Dell] did not pay these expenses." It further determined that there was "no reasonable controversy because [Dell] agreed to pay future medical expenses in the [Application] and the [Order Approving Application] in which the Court ordered [Dell] liable for [Liljestrand]'s reasonable hospital, medical, and miscellaneous expenses related to the September 5, 2001, accident and injury." The compensation court set a hearing for September 10, 2020, to determine the amount of attorney fees owed to Liljestrand. At the September 10 hearing, the compensation court received a fee affidavit from Liljestrand's attorney as well as an affidavit from another attorney which opined that the fee request of counsel was reasonable. Dell's counsel then questioned Liljestrand's counsel on the reasonableness of his fee. Because Dell does not argue that the fee was unreasonable, we do not recount or summarize the evidence presented here. Ultimately, the compensation court entered an order on September 14, 2020, in which it determined that the reasonable attorney fees owed to Liljestrand totaled $9,300.

Dell has filed a timely appeal with this court.

## ASSIGNMENTS OF ERROR

Dell alleges the following errors, restated and renumbered that the compensation court erred (1) in declining to hear the merits of the case because it determined that the lump-sum settlement agreement stipulated that Liljestrand suffered a compensable injury and denied Dell's motion to withdraw their admission that the injury was compensable, (2) when it continued a hearing effectively giving Liljestrand a new trial, (3) when it denied Dell's motion to recuse, (4) in awarding attorney fees, and (5) in continuing the hearing from August 14 to September 10, 2020, to determine the amount of reasonable attorney fees.

STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or; (4) the findings of fact by the compensation court do not support the order or award. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). The factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

On appellate review, decisions regarding discovery are generally reviewed under an abuse of discretion standard. *State v. Soto*, 11 Neb. App. 667, 659 N.W.2d 1 (2003).

A trial court's ruling on recusal will be affirmed absent an abuse of discretion. *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *State v. Soto, supra.*

ANALYSIS

First, Dell argues that the compensation court erred in declining to hear the merits of the case. Specifically, Dell argues that the compensation court erred in determining that compensability was determined by the Application and the Order Approving Application. Second, Dell argues that the compensation court erred in denying their motion to withdraw their admissions admitting the injury was compensable. We address these arguments, in turn.

*Stipulation of Compensability.*

In their brief on appeal, Dell argues that the compensation court erred in concluding that the lump-sum settlement agreement agreed to by the parties in the Application and approved by the compensation court in the order approving application, contained, in effect, a stipulation from Dell that the injury was compensable. Rather, Dell argues that the parties never considered compensability and only entered into a lump-sum settlement agreement wherein "an employer trades cash for a release of indemnity exposure." Brief for appellant 17. Dell further argues that both the Application and the Order Approving Application are ambiguous as to whether the parties stipulated that the injury was compensable.

The terms compensability or compensable are used with reference to injuries or diseases for which an employee is entitled to compensation from his or her employer. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). Compensability is denied when an employer denies that the employee is entitled to compensation for personal injury from his or her employer. *Id.*

The meaning of a judgment is determined as a matter of law, by its contents. *Davis v. Crete Carrier Corp.*, 15 Neb. App. 241, 725 N.W.2d 562 (2006). In the absence of an ambiguity, the effect of a judgment must be declared in light of the literal meaning of language used. *Id.* A judgment is ambiguous if a word, phrase, or provision has at least two reasonable but conflicting meanings. *Id.* However, the fact that the parties have suggested opposite meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id.*

Turning to the present case, we analyze the relevant portion of the Order Approving Application. The Order Approving Application provides:

> IT IS, THEREFORE, ORDERED that the Application for Approval of Final Lump Sum Settlement (leaving medical open) is hereby approved. That upon payment of the sum of $310,000.00 to [Liljestrand], as set forth in said Application, [Dell], its successors, insurers and assigns shall be discharged from all further liability, as to indemnity only, on account of the accident and [Liljestrand's] alleged injuries of September 5, 2001, with the exception of medical expenses.

> [Dell] will continue to be liable for [Liljestrand's] reasonable hospital, medical, and miscellaneous expenses related to the September 5, 2001, incident until such time the Court has approved a further Application regarding an approved Medicare set-aside account as to future medical.

Dell argues, as they did in the compensation court, that the language stating they are liable for reasonable hospital, medical, and miscellaneous expenses is meaningless or boilerplate language because the injury is not compensable, therefore the expenses would amount to nothing. We disagree. The language of the Order Approving Application limits the dispute of any hospital, medical, and miscellaneous expenses to those that are reasonable. In so doing, the language reflects the bargain of the party where in effect, the parties stipulated that Liljestrand is entitled to reimbursement from Dell for reasonable medical expenses which have arisen from his original 2001 injury at work. While there may be disputes as to whether specific expenses are reasonable and related to the workplace injury, there is no dispute contained within the agreement as to whether Liljestrand is entitled to compensation for expenses which are in fact related to the incident on September 5, 2001. Accordingly, we agree with the compensation court's determination that the lump-sum settlement agreement entered into by the parties, through the Application and the Order Approving Application, in effect, stipulated that the injury was compensable.

*Withdrawal of Admissions.*

Dell argues that the compensation court erred when it denied Dell's request to withdraw the admissions that they made during the proceedings in 2010. In particular, Dell seeks to withdraw a response to a request for admission wherein it admitted that Liljestrand, on or about September 5, 2001, "injured his back in the scope and course of his employment with [Dell]."

Discovery in the compensation court is governed by the Nebraska Court Rules of Discovery in Civil Cases, Neb. Ct. R. Disc. §§ 6-301 to 6-337 (rev. 2016). Workers' Comp. Ct. R. of Proc. 4 (2009). Inasmuch as the Nebraska Court Rules of Discovery in Civil Cases are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil

Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules. *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020). There being no Nebraska precedent on this issue, we look to federal authorities.

Rule § 6-336 is patterned after Fed. R. Civ. Procedure § 36. Under this rule, a court may grant a motion to withdraw admissions if two requirements are met: (1) withdrawal of the admission will promote the presentation of the case on the merits and (2) the party who obtained the admission will not be prejudiced in presenting its claim or defense on the merits. § 6-336. The court is not required to make an exception to rule 36 even if both the merits and the prejudice issues cut in favor of the party seeking exception to the rule. *Williams v. Wells Fargo Bank, N.A.*, 560 F. Appx. 233 (5th Cir. 2014). When a party directs its resources, fiscal, physical, and otherwise, to those issues it reasonably believes are the only ones left to be resolved, an abrupt change in the status of the litigation occasioned by a motion of opposing counsel, which had it occurred early on would likely have effected a distinctly different allocation of resources, should only be allowed upon a showing that the rule 36(b) test is met by clear and convincing evidence. *Branch Banking and Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655 (E.D.N.C. 1988).

Assuming without deciding that Dell is able to make the requisite showing that withdrawal of the admissions would promote the presentation of the case on the merits, we instead focus on the prejudice prong in the rule 36 test. The prejudice contemplated by rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth. *Hadley v. U.S.*, 45 F.3d 1345 (9th Cir. 1995). Prejudice relates to the difficulty a party may face in proving its case, such as the unavailability of key witnesses, because of the sudden need to obtain evidence. *Id.* Factors to consider are how long the parties have relied on the admissions and how close to trial the motion to withdraw admissions is filed. *Conlon v. U.S.*, 474 F.3d 616 (9th Cir. 2007). In *Conlon*, the Ninth Circuit Court of Appeals determined that the trial court did not commit clear error when it denied a motion to withdraw admissions when the government had relied on the admissions for a total of 2½ months, through discovery and dispositive motion cut-off dates, with no indication that there was an intention to file a motion to withdraw the admissions. *Id.* Similarly, in *Williams v. Wells Fargo Bank, N.A., supra*, the Fifth Circuit determined that the district court did not abuse its discretion in denying a motion to withdraw admissions when the party seeking to withdraw its admissions did not challenge the admissions until making the challenge part of their response to a motion for summary judgment, more than 4 months after the deadline to make the request. Wells Fargo, as the party who obtained the admissions, argued that it was prejudiced because discovery had been closed, the dispositive motion deadline had passed, a motion for summary judgment was filed, and trial was set to take place in 3 weeks. *Id.* The court determined that the party seeking to withdraw their admissions were not diligent in seeking relief. *Id.* To the contrary, the Tenth Circuit Court of Appeals has previously determined that there was not a showing of sufficient prejudice when only 2 weeks passed between the due date for the responses to the admission and the date that the defendant filed his initial motion to amend his admissions. *Raiser v. Utah County*, 409 F.3d 1243 (10th Cir. 2005).

In the present case, we find that the compensation court did not abuse its discretion in determining that Liljestrand would suffer prejudice if the admissions were withdrawn. First, Dell did not act with diligence in attempting to withdraw its admissions. Liljestrand suffered his injury

in 2001. Dell first admitted that the injury was compensable in 2010. Dell paid benefits to Liljestrand. A trial was held in 2011 and compensability was not at issue. There were separate appeals in 2011 and 2013 which resulted in an order for new trial. The parties settled the matter in 2016. An order was entered pursuant to the settlement which was not appealed by Dell. Dell did not seek to withdraw their admissions until 2019.

Second, Liljestrand would be prejudiced if these admissions were withdrawn more than 9 years after they were initially made and nearly 20 years after the initial injury. Since 2010, Liljestrand has relied on Dell's admission that the injury was compensable. While Dell contends that they would allow as much time as was necessary for Liljestrand to gather evidence regarding the compensability of his injury, the injury occurred 20 years ago and the evidence to prove compensability of the injury may be nonexistent due to the passage of time. Liljestrand relied on Dell's admission for nearly 10 years. As such, we find that the compensation court did not abuse its discretion in denying Dell's motion to withdraw their admission regarding compensability of Liljestrand's injury.

*Grant of Further Hearing on Medical Expenses.*

Dell argues that the compensation court erred in its November 14, 2019, order which Dell contends effectively set the matter for another trial or hearing after both parties submitted the matter for the compensation court's ruling. Dell contends that the compensation court effectively granted Liljestrand a new trial.

The compensation court has authority to rule upon any motion except motions for new trial. § 48-162.03. Under Nebraska law governing civil procedure, a new trial is defined as a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015). In the context of the compensation court, we explained that an employer effectively made a motion for new trial when the employer asked the compensation court to reopen the record, accept newly discovered evidence, and reconsider its prior decision based upon the employer's belief that the new evidence would bring about a different result. *Id.* The Supreme Court also addressed a similar issue in *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019), where the parties were given 3 days to submit written closing arguments after an evidentiary hearing on the merits of whether an employee had reached maximum medical improvement. During this time frame, Westin filed pleadings entitled "Withdrawal of Motion to Terminate" and "Withdrawal of Motion to Determine" which the compensation court did not permit. *Id.* Westin appealed and the Supreme Court noted that while it was not controlling, the motion to withdraw its motion to determine maximum medical improvement after the evidentiary hearing on maximum medical improvement would tend to defeat the prohibition against motions for new trials. *Id.*

We note, initially, that Liljestrand's primary purpose for the October 28, 2019, hearing was to receive an order to enforce the Order Approving Application. The prayer for relief of the "Motion to Enforce Settlement" requests an order of the compensation court "specifically directing and requiring [Dell] to continue to be liable and responsible for [Liljestrand's] reasonable hospital, medical, and miscellaneous expenses related to the claimed injury of [Liljestrand]." Liljestrand reiterated as much during this hearing stating that the parties were there "to reinforce that [Dell] shall pay." Liljestrand filed the motion to enforce in response to an email received from counsel

for Dell wherein counsel stated that no further benefits will be authorized based on counsel's determination that the 2001 injury was not compensable. While our record demonstrates there was confusion between the parties and the court as to the exact purpose of the hearing initially, it gradually became apparent that the focus of the initial hearing was on the issue of whether any expenses were compensable, not whether specific expenses were reasonable and related to the 2001 injury. The request for payment of any specific medical bills presented at the October hearing were contingent on the compensation court determining that Dell was liable for reasonable medical expenses. Interestingly, during a colloquy with the court after counsel for Liljestrand proposed bifurcating the proceeding, counsel for Dell replied "Ron, you do whatever you want. If you want another hearing, that's fine."

We also note there was not a motion for new trial, nor an order granting new trial. There was not a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the compensation court. Moreover, neither party asked the compensation court to reopen the record or reconsider its prior decision.

Ultimately, contrary to the assertion of Dell, we do not find that the continuance of the October 28, 2019, hearing was effectively a new trial. Dell relies on the statement made in *Fentress v. Westin, Inc., supra*, that the continuance would effectively defeat the prohibition against motions for new trial. However, unlike the circumstances presented in *Fentress v. Westin, Inc., supra*, here, both parties knew that the record was still open with respect to whether specific medical bills should be paid. The compensation court specifically stated that there would be an additional telephone conference as to whether these specific medical bills would be paid.

We do recognize that at the hearing, Liljestrand offered into evidence an exhibit, which was purported to be receipts from prescriptions which were related to his injury and which should be paid by Dell. In opposition to Liljestrand's offer of the exhibit, Dell argued that there was not enough foundation to require reimbursement for these medical expenses. The court ultimately stated that there will be a telephone conference wherein Liljestrand could offer additional medical evidence to establish the foundation for the payments. The court gave Liljestrand until January 10, 2020, to obtain records and/or reports in support of the medical bills.

We find no error in the procedure employed by the court. The initial hearing and the subsequently scheduled hearing had related, although separate, purposes. The first hearing dealt with Liljestrand's motion to enforce settlement as well as Dell's motion to withdraw its admissions, to amend its answer filed in 2014, and its motion for the court to determine the compensability of the 2001 injury. All of these motions ultimately focused on whether the 2016 settlement and order thereon could be set aside and the issue of compensability of the original injury could be litigated. As noted by the compensation court, there was no need to address that issue if there were no medical expenses in controversy. As such, Liljestrand at this juncture needed to prove that expenses existed. The court did not need to proceed to consideration of whether the expenses were reasonable and related to the injury until after the first issue was resolved. Counsel for Dell admitted as much when he stated that the actual prescriptions were "not the main issue here." As such, the court did not grant a new trial to Liljestrand on the issue of whether the medical expenses were related to the injury and reasonable. The court simply bifurcated the proceeding to first address the compensability issue and then (if compensable) address each submitted bill specifically.

*Motion to Recuse.*

Dell argues that the compensation court erred when it denied Dell's motion to recuse because a reasonable person in this case would question the compensation court's impartiality. Dell argues that the compensation court gave Liljestrand "multiple opportunities to cure his evidentiary defects" and explicitly told Liljestrand what evidence he would need in order to be successful. Brief for appellant at 25-26.

Under Neb. Rev. Code of Judicial Conduct § 5-302.11, a judge is disqualified whenever the judge's impartiality might reasonably be questioned. Under the code, such instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer. *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019). Impartiality requires, among other things, that a judge must not appear to act in the dual capacity of judge and advocate. *Id.* A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Mihm v. American Tool*, 11 Neb. App. 543, 664 N.W.2d 27 (2003).

Nebraska appellate courts have found bias as a matter of law in cases where judges have made factual determinations about the parties not related to the evidence in the case. See *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012) (finding appearance of bias when judge issued custody determinations when no evidence had been presented on these issues); *Mihm v. American Tool, supra* (finding that court behaved as advocate in reciting certain facts about American Tool despite absence of any evidence as to those facts in record).

The Supreme Court previously rejected an argument that a trial court judge should have been disqualified when the judge made comments stating the legal authority relevant to the issue at hand and inviting the State to consider the consequences of dismissal. *In re Interest of Michael N., supra.* Therein, the trial court judge expressed some concern about the State's motion to dismiss stating that the judge was "kind of worried" that the motion was not well thought out and provided legal authority for what she was considering in the case. *Id.* at 658, 925 N.W.2d at 57. The Supreme Court found that the judge was stating the authority relevant to the issue at hand and inviting the State to consider the consequences of dismissal but not directing the State's decision. *Id.*

In the present case, Dell argues that the compensation court judge demonstrated bias through its comments instructing Liljestrand what evidence to submit in support of its medical bills and in continuing the hearing to allow for this evidence to be submitted. We do not find that these comments and actions rise to the level of demonstrating partiality. During the first hearing a discussion took place between counsel and the court regarding what evidence would be needed to establish adequate foundation and proof as to whether the expenses offered would be related to the original injury. Ultimately, the issue at that hearing was narrowed to general compensability. In its November 14, 2019, order the court resolved that issue and set further hearing as to whether the specific bills were related and reasonable. In so doing, the court did note that additional evidence in the form of records or reports would need to be submitted at the next hearing by Liljestrand in order to prove that the expenses were related to the injury sustained in 2001. While we do not necessarily endorse the guidance provided by the court in the order, we also do not lose sight of

the context in which it was written. What sufficed at the first hearing was different than what was needed in the second. This matter was debated by the parties and addressed by the court during the first hearing. On this record, we cannot find that the order of the court demonstrated bias. The parties were both aware of the hearing being continued. Both parties were given an opportunity to present evidence relevant to whether the medical expenses were reasonable and related. Therefore, we do not find that the compensation court abused its discretion in declining to recuse itself.

*Attorney Fees.*

Dell argues that the compensation court erred in awarding Liljestrand attorney fees, in that such an award conflicts with the language of Neb. Rev. Stat. § 48-125 (Cum. Supp. 2020) because there was a reasonable controversy which would preclude attorney fees. Dell argues that there were two controversies: (1) whether the lump sum settlement was a determination of compensability and (2) the deficient foundation that Liljestrand produced at the time of the hearing on October 28, 2019, showed that there was a reasonable controversy as to whether the medical expenses were reasonably related.

Section 48-125(4)(a) provides, in relevant part:

Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). Like other questions of fact, the compensation court's determination of reasonable attorney fees pursuant to § 48-125 will not be disturbed on appeal unless it is clearly wrong in light of the evidence. *Bower v. Eaton Corp., supra.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Whether a reasonable controversy exists under § 48-125 is a question of fact. *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

In the present case, Dell argued to the compensation court that attorney fees were inappropriate in the current action because there was a reasonable controversy as to whether the injury was compensable and there was a reasonable controversy as to whether the medical bills were related to the injury. We address these arguments, in turn.

It is true that if there is a reasonable controversy as to the compensability of an injury, an employer is entitled to litigate that issue in the compensation court. *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007). However, in the present case, we do not find that the compensation court clearly erred in finding there to be no reasonable controversy, in light of the evidence. Once an employer and an employee reach a lump-sum settlement agreement, there is no remaining factual or legal dispute over the claim and thus no reason to refuse to pay the agreed-upon settlement amount. *Dragon v. Cheesecake Factory*, 300 Neb. 548, 915 N.W.2d 418 (2018). The

parties reached a lump-sum settlement agreement that obligated Dell to pay all reasonable hospital, medical, and miscellaneous expenses related to the incident. Because the agreed-upon settlement amount included that Dell would be liable for Liljestrand's reasonable hospital, medical, and miscellaneous expenses related to the injury, there was no other factual or legal dispute with respect to whether Dell would be liable for paying these expenses, provided that the expenses were reasonable. In addition, Dell previously admitted that the injury was compensable in 2010. It was only after 9 years and numerous hearings and appeals that Dell finally sought to withdraw its admission from the record. Dell never contested that the injury was compensable during any of that time, and did not appeal the court's 2016 order approving the settlement. Accordingly, the compensation court did not err in determining there was no reasonable controversy as to whether the injury was compensable.

We also do not find that the compensation court committed clear error, in light of the evidence, when it determined that there was not a reasonable controversy as to whether the medical bills were reasonable and related to the incident. A reasonable controversy under § 48-125 may exist, for instance, if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008). A reasonable controversy may occur when there is some conflict in the medical testimony adduced at trial because reasonable but opposite conclusions could be reached by the compensation court. *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015). The Supreme Court has previously explained that even in instances when there was not evidence to support delaying the payment of benefits at the time that the employer denied making the payments, if evidence is presented at trial to support this delay, then a reasonable controversy exists. See *id.* The evidence shows that there was no reasonable controversy as to whether these medical expenses were related to Liljestrand's injury. The record does not contain any evidence from Dell that the requested treatment was not related to the original injury nor that the costs were not reasonable and necessary. Without such evidence, there is no evidence establishing a reasonable controversy. As such we cannot say that the compensation court was clearly wrong in its determination that there was no reasonable controversy in this respect.

*Separate Hearing on Attorney Fees.*

Finally, Dell argues that the compensation court erred in continuing the August 2020 hearing on attorney fees to allow Liljestrand to present evidence as to the amount of attorney fees that should be awarded. The August hearing concluded with an order from the compensation court requiring Dell to pay the medical bills that were submitted at the hearing. The compensation court stated that there was "absolutely no reason why [Dell] did not pay these expenses." However, Liljestrand did not produce any evidence to show the fee he was entitled to. The compensation court scheduled a separate hearing to make the determination of how much the attorney fees should be. Dell objected to a further hearing and renewed its objection at the subsequent hearing held in September. Dell argues that the compensation court was required to rule on what it had received at the time of the August hearing and could not continue that hearing in order to hold a separate evidentiary hearing on how much attorney fees should be awarded.

Section 48-125 does not mandate the amount of attorney fees to be collected but authorizes a reasonable fee. The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis. *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014). In making that calculation, the trial court should consider, as in other attorney fee contexts, the value of legal services rendered by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *Id.* Particular attention should be given to the amount of legal work performed in relation to the amount of the unpaid medical bill and the amount of the unpaid medical bill in relation to the workers' compensation award received. *Id.* We have previously remanded cases back to the compensation court for evidence and specific findings when there was a lack of evidence to support a specific amount for attorney fees. See, e.g., *Cochran v. Bill's Trucking*, 10 Neb. App. 48, 624 N.W.2d 338 (2001).

In the present case, the compensation court determined that there would be an attorney fee awarded. However, based upon the evidence it had received at the August 2020 hearing, it was unable to calculate what a reasonable amount of fees would be if it awarded the attorney fees. Given the specific and fairly unique nature of the facts and procedural history of the case, we can find no error in the court setting a separate hearing specifically addressing the issue of attorney fees. While the interests of judicial economy would have been best served by both parties being prepared to address the attorney fees issue in the August hearing, we cannot say that the compensation court erred by holding a separate hearing to properly determine the reasonable amount for attorney fees.

## CONCLUSION

For all of the foregoing reasons, we affirm the decision of the compensation court.

AFFIRMED.